# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 98-KA-00394-SCT

*JOHNNY BIRKLEY AND DENNIS BIRKLEY*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/22/1998 |
| TRIAL JUDGE: | HON. BETTY W. SANDERS |
| COURT FROM WHICH APPEALED: | WASHINGTON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | GEORGE T. KELLY, JR. |
| | HOWARD Q. DAVIS, JR. |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEAN SMITH VAUGHAN |
| DISTRICT ATTORNEY: | FRANK CARLTON |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 12/02/1999 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 12/23/99 |

## BEFORE PITTMAN, P.J., WALLER AND COBB, JJ.

## COBB, JUSTICE, FOR THE COURT:

### STATEMENT OF THE CASE

¶1. This is a criminal appeal from the Circuit Court of Washington County, Mississippi. Dennis Birkley, age seventeen, and his cousin Johnny Birkley, age thirteen, and brothers Samuel Gilmore and Andrew Gilmore, were arrested and charged with the robbery and shooting of Jimmy Yawn and David Speed in Greenville on December 11, 1996. Thirteen months later, on January 20, 1998, Dennis Birkley and Johnny Birkley were tried jointly, at their request. Samuel and Andrew Gilmore entered guilty pleas and were ultimately sentenced to ten years with one suspended, and five years with one suspended, respectively.

¶2. The jury found Dennis Birkley guilty of two counts of aggravated assault and one count of armed robbery, and he was sentenced to serve fifteen years on each aggravated assault count and twenty years on the armed robbery count, to run concurrently. The jury found Johnny Birkley guilty of two counts of aggravated assault, and he was sentenced to serve fifteen years on each count, to run concurrently.

¶3. On January 16, 1998, the trial court heard argument on the Birkleys' pre-trial motion to dismiss for violation of their constitutional right to a speedy trial. The trial commenced on January 20, 1998, and at the close of the State's case, and again at the conclusion of all evidence, the Birkleys moved for a directed

verdict. Subsequently, they moved for a JNOV or, in the alternative, a new trial. All these motions were denied. On appeal to this Court both Dennis and Johnny Birkley raised the identical first five (5) issues, and only Dennis Birkley raised issue number six (6).

**I. THE TRIAL COURT ERRED IN NOT GRANTING THE DEFENDANT'S MOTION TO DISMISS FOR WANT OF CONSTITUTIONAL SPEEDY TRIAL**.

**II. THE TRIAL COURT ERRED IN NOT GRANTING THE DEFENDANT'S MOTION FOR A DIRECTED VERDICT.**

**III. THE TRIAL COURT ERRED IN NOT GRANTING THE DEFENDANT'S REQUEST FOR A DIRECTED VERDICT AT THE CLOSE OF ALL OF THE EVIDENCE OR IN NOT GRANTING SOME OR ALL OF THE REQUESTED INSTRUCTIONS D-1A, D-2A, D-3A, D-4A, AND D-5A.**

**IV. THE VERDICT OF THE JURY WAS SUCH AS TO INDICATE THAT THE JURY CLEARLY DID NOT UNDERSTAND AND/OR FOLLOW THE COURT'S INSTRUCTIONS; THEREFORE, EVIDENCING PREJUDICE UPON THE PART OF THE JURY.**

**V. THE CUMULATIVE ERRORS IN THIS CASE REQUIRE THAT THE CONVICTION AND SENTENCE BE REVERSED.**

**VI. THE TRIAL COURT ERRED IN THE SENTENCING OF DENNIS BIRKLEY, PARTICULARLY IN PENALIZING DENNIS BIRKLEY FOR EXERCISING HIS RIGHT TO A JURY TRIAL IN THIS CASE.**

## STATEMENT OF THE FACTS

¶4. On December 11, 1996, David Speed and Jimmy Yawn were repairing an air vac machine at a Double Quick convenience store in Greenville, Mississippi. At about 12:50 a.m., three young men approached them. They talked for several minutes, then one of the men asked Speed for a dollar, to which Speed replied that he did not have any money. The young men turned, as if to leave, and Speed returned to his work, only to hear one of them say "this is a stick-up." Speed reached for his wallet as one of the men lunged for him, and then Speed was shot in the upper part of his chest. Immediately after hearing the gunshot, Jimmy Yawn gave his wallet and money to another one of the men, and then Yawn was shot in the leg. Included in the money taken from Yawn was a 1934 twenty-dollar bill, a keepsake from his grandmother, which was an odd color green.

¶5. Speed viewed a photographic line-up later in the day where he identified Johnny Birkley as one of the suspects. Speed and Yawn both remembered that one of the assailants was wearing a cap that appeared to be brown leather and one was wearing a maroon or red jacket.

¶6. About 1:37 a.m. that same morning, Officer Kenneth Robinson of the Greenville Police Department left the crime scene and went to the Citgo convenience store to get something to drink. While he was there, one of the clerks asked him to look at some money she had just received that she believed to be counterfeit. The clerk said that Andrew Gilmore had just given the money to her. Johnny Birkley and Dennis Birkley were with Gilmore at the time. Unaware at the time that this was the same twenty-dollar bill taken from

Yawn, Robinson arrested Gilmore for possession of counterfeit money and public drunkenness. When Andrew Gilmore was arrested for possession of counterfeit money, he was also found to be in possession of five .38 bullets and one .38 shell casing.

¶7. While Officer Robinson was booking Andrew Gilmore at the police station, Johnny and Dennis Birkley were brought in as suspects in the armed robbery at the Double Quick. Officer Rodriquez had been patrolling the area about 2:36 a.m. when he observed the Birkleys sitting in the Huddle House Restaurant and determined that they fit the descriptions of the armed robbery suspects mentioned in an earlier dispatch. After Officer Rodriquez called back-up officers who confirmed the descriptions, the Birkleys were escorted outside, questioned, and then taken to the police station.

¶8. At trial, Andrew Gilmore testified that on the morning of the robbery he was at home when Dennis Birkley, Johnny Birkley, Samuel Gilmore and Ray Winters came by to get him to buy some beer for them. Andrew Gilmore testified that Dennis Birkley told him that they "just hit a lick," and when he asked what that meant, Dennis Birkley, Johnny Birkley and Samuel Gilmore, "pulled out some money." Andrew said he asked them for some of the money and that Johnny Birkley gave him a twenty-dollar bill and Samuel Gilmore gave him a one-hundred dollar bill. Andrew also testified that Dennis told him that they had just shot somebody, and that it was Dennis that shot the first victim. Andrew further testified that his brother Samuel admitted to shooting one of the victims by mistake. On cross-examination Andrew stated that he was drunk while he was at the Citgo Station. He also admitted having .38 bullets in his shirt pocket.

¶9. At the close of the State's case, Dennis Birkley and Johnny Birkley moved for a directed verdict stating that there was insufficient evidence to find them guilty. The motions were denied.

¶10. Johnny Birkley and Dennis Birkley elected not to take the stand in their own defense. Following summations and jury instructions, the jury returned guilty verdicts as to each defendant as outlined above. The Birkleys' post-trial motion for a JNOV or in the alternative a new trial was denied.

## ANALYSIS

### I. THE TRIAL COURT ERRED IN NOT GRANTING THE DEFENDANT'S MOTION TO DISMISS FOR WANT OF CONSTITUTIONAL SPEEDY TRIAL.

¶11. The constitutional right to a speedy trial attaches at the time of a formal indictment, information, or arrest. *Smith v. State*, 550 So. 2d 406, 408 (Miss. 1989); *Perry v. State*, 419 So.2d 194, 198 (Miss. 1982). In determining whether a defendant's constitutional right to a speedy trial has been violated, this Court utilizes the four-part balancing test set forth by the United States Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) and applied by this Court in numerous cases, including *DeLoach v. State*, 722 So.2d 512, 516 (Miss. 1998). The factors to be considered are: (1) length of delay; (2) reason for the delay; (3) whether the defendant has asserted his right to a speedy trial; and (4) whether defendant was prejudiced by the delay. *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972).

¶12. In using the *Barker* factors, a weighing and balancing process must be performed in consideration of the totality of the circumstances. *DeLoach*, 722 So.2d at 516 (citing *Beavers v. State*, 498 So.2d 788, 790 (Miss. 1986)). The following chronology is helpful in analyzing this speedy trial issue:

December 11, 1996 Arrested and Incarcerated. Bond set at $200,000.

December 12, 1996 Request by Dennis Birkley and Johnny Birkley for: (1) A preliminary hearing, (2) Counsel to be appointed, (3) Continuance until 12/19/96 in order for counsel to be obtained.

December 13, 1996 Order for public defender to be appointed.

December 18, 1996 Motion for relief of counsel based on conflict of interest

December 19, 1996 Order for relief of counsel based on conflict of interest

May 30, 1997 Indictment:

June 3, 1997 Capias issued

July 7, 1997 Arraigned. Demand for discovery and speedy trial for Johnny Birkley

August 5, 1997 Motion for severance brought by Johnny Birkley but abandoned soon thereafter

August 12, 1997 Order of Continuance granted to Dennis Birkley for cause shown

August 13, 1997 The case was initially set for trial

August 19, 1997 Notice of alibi defense submitted by Dennis Birkley

September 24, 1997 Order granting State's motion for continuance due to unavailable witness and new trial set for December 3, 1997

September 29/30, 1997 Motion for reduction of appearance bond

October 3, 1997 Bond Reduction Hearing

December 3, 1997 Defendants' Motion for Mistrial granted, and new trial set for January 20, 1998

December 23, 1997 Motion to Dismiss filed by Johnny Birkley

December 31, 1997 Motion to Dismiss filed by Dennis Birkley

January 16, 1998 Pretrial Hearing on Motions to Dismiss-Denied

January 20-21, 1998 Trial

¶13. The *Barker* analysis begins with the first factor which operates as the "triggering mechanism." *Simmons v. State*, 678 So.2d 683, 686 (Miss. 1996).

## 1. Length of Delay

¶14. In this case, we must calculate the delay from the date of arrest. This Court repeated in *Simmons* "that any delay of eight (8) months or longer is presumptively prejudicial." *Simmons* at 686. The thirteen (13) month delay between the arrest on December 11, 1996, and the trial on January 20, 1998, was presumptively prejudicial and triggers the *Barker* analysis. It should be noted that from the day of arrest, December 11, 1996, until the day the first trial was set, August 13, 1997, eight months later, is a total of

242 days. The Defendants' Motion for Continuance was the reason the trial was not held on August 13. Nevertheless, the over-all length of the delay in the case *sub judice* must be weighed in favor of the Birkleys in the balancing test analysis for constitutional speedy trial purposes.

## 2. Reason for the Delay

¶15. Once we find the delay presumptively prejudicial, the burden shifts to the prosecution to produce evidence justifying the delay and to persuade the trier of fact of the legitimacy of these reasons. *Ferguson v. State*, 576 So.2d 1252, 1254 (Miss. 1991). However, presumptive prejudice alone is insufficient to allow the defendant to prevail on speedy trial grounds. *Hurns v. State*, 616 So.2d 313, 317 (Miss. 1993) (citing *Doggett v. United States*, 505 U.S. 647, 112 S. Ct. 2686, 120 L. Ed. 2d 520 (1992). Continuances granted to the State where the State has demonstrated good cause, are not counted against the State. *Flores v. State*, 574 So.2d 1314, 1318 (Miss. 1990).

¶16. In *Barker*, the U.S. Supreme Court stated:

> Closely related to length of delay is the reason the government assigns to justify the delay. Here, too, different weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

*Barker* at 531 (footnote omitted). In *Adams*, we stated that delays resulting from docket congestion are to be weighed against the State, but not heavily. *Adams v. State*, 583 So.2d 165, 169 (Miss. 1991) (citing *Barker* at 531). In *McGee v. State*, 608 So.2d 1129, 1133 (Miss. 1992), we indicated the need to analyze the reasons for the docket congestion, stating that: "If the State can so demonstrate, then the trial court's denial of McGee's motion to dismiss may be proper since docket congestion can constitute 'good cause' for delay."

¶17. The August setting, which was just slightly over eight (8) month delay, was presumptively prejudicial requiring the prosecution to produce evidence justifying the delay. *Simmons* at 686; *Ferguson* at 1254. The record is silent as to why the case was not presented to the first available grand jury. The State argued crowded court docket, but there was no evidence produced to support this claim. Therefore, this factor must be weighed against the State. *Perry v. State*, 419 So.2d 194, 199 (Miss. 1982). The other delays were demonstrated for good cause and are not counted against the State. The presumption that the delay was prejudicial may be rebutted when balanced with the other three factors. *Coleman v. State*, 725 So.2d 154, 157 (Miss. 1998). The trial judge addressed the fact that Johnny Birkley did ask for a speedy trial in July of 1997, but he also had later made an "affirmative decision to be tried jointly with his cousin, Dennis, thus subjecting himself to the delays caused by or related to Dennis Birkley." The reasons for the delays, coupled with the actions taken by the defense weighs this factor in favor of the State, but only slightly.

## 3. Assertion of Defendant's Right to a Speedy Trial

¶18. The next factor we consider is the defendant's assertion of his right to a speedy trial. On July 7, 1997, counsel for Johnny Birkley filed with the Washington County Circuit Clerk a letter of demand for discovery

and a speedy trial. Even if this demand was premature, this weighs heavy in Johnny Birkley's favor. As this Court found in *Perry*:

> In the Barker case, this factor [the defendants assertion of his right to a speedy trial] is afforded strong evidentiary weight.... A state may not neglect the defendant's request.

*Perry* at 199.

¶19. It appears from the record that the defense did directly contribute to at least ninety-one (91) days of delay by: a) Motion for Severance by Johnny Birkley-August 5, 1997 (even though it was later withdrawn); b) Order of Continuance granted to Dennis Birkley-August 12, 1997; and c) defendants granted a mistrial-December 3, 1997. There is no record that the defense asked for a speedy trial at any of these times. Only after the December 3 mistrial did defense file any motion which included the argument of lack of a speedy trial. The new trial date was set for January 20, 1998. Johnny Birkley's Motion to Dismiss was filed on December 23, 1997, and Dennis Birkley's similar Motion was filed on December 31, 1997, both less than one month before the trial. Both Motions to Dismiss were considered and overruled on January 16, 1998, four days before trial. However, those Motions sought dismissal, not a trial. *Perry v. State*, 637 So.2d 871, 875 (Miss.1994); see *Adams*, 583 So.2d at 170. We weigh this factor against the Birkleys.

¶20. This case can be compared to *Simmons v. State*, 678 So. 2d at 687, where the defendant's right to a constitutional speedy trial was not violated:

> . . . although 21-month delay between arrest and trial was presumptively prejudicial, where significant portion of delay was due to defendant's request for psychological evaluation, defendant did not bring motion to dismiss on speedy trial grounds for over a year, and defendant did not demonstrate any prejudice. "Thus, this factor favors the State, but only slightly because the "primary" burden is upon the State."

¶21. In *DeLoach v. State*, 722 So. 2d 512, 518 (Miss 1998), DeLoach failed to file a motion to dismiss until after one year and seven months from the date of his arrest, and this Court found that this factor favored the State only slightly, citing *Simmons* at 687.

¶22. In *Barker* the Court applied this third factor in close relationship to the other factors already mentioned:

> Whether and how a defendant asserts his right is closely related to the other factors we have mentioned. The strength of his efforts will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice, which is not always readily identifiable, that he experiences. The more serious the deprivation, the more likely a defendant is to complain. The defendant's assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial.

*Barker* at 531-32.

¶23. In analyzing these specific facts to the present case, these factors weigh slightly in favor of the State, but only slightly. Even though Johnny Birkley did make the court aware of his desire for a speedy trial in July of 1997, neither his actions nor Dennis Birkley's actions indicate that it was a "meaningful demand." Therefore, this factor weighs only slightly in favor of the State, which still has the burden of bringing the defendants to trial in a timely manner and because of the facts of this case did not show a wilful intention to do otherwise.

### 4. Prejudice to the Defendant

¶24. Next we consider prejudice to the defendant. Both Dennis and Johnny Birkley have made general allegations in the trial court and on appeal that they have been prejudiced. The *Barker* Court emphasized that speedy trial rights are designed to protect three interests of defendants: a) protect against oppressive pretrial incarceration; b) minimize anxiety and concern of the defendant; and c) limit the possibility that the defense will be impaired. *Barker* at 532. The third interest is the most important because it protects the defendant's right and ability to adequately prepare his case.

> If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past. Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown.

*Barker* at 532.

¶25. In analyzing this final factor the Court must also take note of the burden of production and persuasion. In *Ferguson*, this Court stated, "Where the delay has been presumptively prejudicial, the burden falls upon the prosecution." *Ferguson v. State*, 576 So.2d 1252, 1255 (Miss. 1991) (citing *Prince v. Alabama*, 507 F.2d 693, 707 (5th Cir.1975)).

¶26. In the case *sub judice*, it is of particular concern that these defendants were young and unable to post bond. This point is not taken lightly by this Court, and we again refer to the discussion concerning this factor in *Barker* where the Court noted the societal disadvantages of lengthy pretrial incarceration, especially to the accused who cannot obtain his release. *Id*. at 532-33.

¶27. This Court has recognized that a defendant may be prejudiced in two different ways by a substantial delay. *Skaggs v. State*, 676 So.2d 897, 901 (Miss.1996). First, a delay may impair the accused's defense because of the potential loss of evidence, the unavailability of witnesses, or the erosion of a witness's memory. *Id*. The second reason a defendant may suffer prejudice would be because of the restraint on his liberty by his incarceration. *Id*. In support of such prejudice, the defendant may offer evidence of oppressive pretrial incarceration, anxiety and concern, and impairment of his defenses. *Johnson v. State*, 666 So.2d 784, 793 (Miss.1995). Although a defendant is not required to "make an affirmative showing of prejudice to show that his right to a speedy trial was violated," without a showing of any prejudice, this final factor cannot weigh in his favor. *Polk v. State*, 612 So.2d 381, 387 (Miss.1992). Moreover, incarceration alone is not sufficient prejudice to warrant reversal. *Taylor v. State*, 672 So.2d 1246, 1261 (Miss.1996).

¶28. The State argues that the Birkleys did not furnish material facts to establish that their pretrial incarceration was oppressive. The Birkleys argue that Johnny Birkley "could not attend school while being continually treated as an adult offender." They also argue that "the red or maroon shirt, jacket, or whatever,

which was the one thing that was supposed to have linked Dennis Birkley to this crime was never produced." The State argues that the Birkleys did not specify the alleged prejudice in their demand for a speedy trial in December, except as to their age, and anxiety as a result of the incarceration. The State argues that age would be a factor if the defendant had suffered, "prejudice because of mental or physical deterioration directly related to age which resulted in the accused's diminished abilities to assist in their defense." (citing *U.S. v. Rogers*, 781 F. Supp. 1181, 1190 (S.D. Miss. 1991)). The State then reasons that the key consideration would be whether the prejudice was directly correlated to the incarceration and that in the case *sub judice*, no such prejudice was alleged. In **_Kolberg v. State_**, 704 So.2d 1307 (Miss. 1997), this Court indicated that there must be a showing of prejudice to an extent that the defendant could not defend against the charge, stating:

> . . . we must examine whether Kolberg suffered prejudice occasioned by the delay. Kolberg does not claim that because of the delay witnesses scheduled to testify for the defense disappeared or that any evidence was lost or destroyed or any actual prejudice was incurred. There is no showing of Kolberg being prejudiced to an extent that he could not defend against the charge, nor is there any indication that the State engaged in oppressive conduct. Kolberg's claim of a violation of speedy trial rights is without merit.

*Kolberg v. State*, 704 So.2d 1307, 1319 (Miss. 1997).

¶29. Considering the offenses for which these defendants are charged, and also considering the lack of proof of wilful conduct to delay the trial, this Court weighs the fourth factor only slightly for the Birkleys and does not weigh against the State.

¶30. The balancing test set forth in *Barker* must be applied on a case by case basis under the particular facts of the case under consideration. *Kinzey v. State*, 498 So.2d 814, 816 (Miss. 1986). In applying the facts to the totality of the circumstances, the balance in this particular case supports the State's contention that the Birkleys were not denied their constitutional right to a speedy trial. The Court finds that the age of Johnny Birkley does weigh heavily in his favor and the fact that he made note of a speedy trial in July of 1997 carries great weight. But, after this one letter, the defense contributed to some of the delays accounted for and failed to object or assert the right to a trial until one month before the actual trial was held.

¶31. In summary our analysis of the *Barker* factors is as follows:

**(1) Length of the Delay**. Favors the Birkleys so that the other three factors must be analyzed.

**(2) Reason for the Delay.** Favors the State, slightly.

**(3) Assertion of Right.** This factor weighs in favor of the State but only slightly. The length of time involved and the reasons for the delays are balanced with the actions of defense counsel and the lack of any wilful intent by the State to delay the trial.

**(4) Prejudice to the Defendant.** Here, the Birkleys have shown no actual prejudice. There was presumptive prejudice only. This factor favors the Birkleys only slightly and does not weigh against the State. The responsibility to see to it that an accused has a speedy trial is the government's job. On the other hand, defense counsel has a responsibility to see to it that steps are taken to ensure the process runs smoothly. Defense counsel has the right to ask for a continuance and to file motions that are for the benefit

of his clients, but the defense should take care to preserve the right to a speedy trial by not unnecessarily causing delay. Of importance would be to make sure that the defense does everything necessary to be placed before the first grand jury available and especially when the eight months have passed, defense should begin showing in the record that the defendants are in fact ready to go to trial and are asking for a trial.

¶32. The trial court's ruling is not taken lightly. Even after considering the four factors, other factors may contribute to the Judge's ruling and ability to exercise judicial discretion based on the circumstances. The trial judge has not abused her discretion. This assignment is without merit and is denied.

## II. THE TRIAL COURT ERRED IN NOT GRANTING THE DEFENDANTS' MOTION FOR A DIRECTED VERDICT.

¶33. The Birkleys next assign as error the trial court's failure to grant a directed verdict at the conclusion of the State's case-in-chief. Specifically, they complain that the evidence was too weak to support the verdict. The State claims that the Birkleys are procedurally barred from seeking review of the legal sufficiency of the evidence at the close of the State's case-in-chief because they proceeded to put on their own defense. Alternatively, the State claims the Birkleys' challenge as to the legal sufficiency of the evidence must fail. In addition, the State notes that the Birkleys cite no authority in support of their argument.

¶34. The Court has addressed this issue recently:

> A criminal defendant has several procedural vehicles available to him for challenging the sufficiency of the case for the prosecution--the motion for directed verdict made at the end of the case for the prosecution, the request for a peremptory instruction at the end of all of the evidence or the motion for a directed verdict at that point, or finally, a motion for judgment of acquittal notwithstanding the verdict. See *Wetz v. State*, 503 So.2d 803, 808 (Miss.1987). Each requires that the court consider all of the evidence before it at the time the motion is considered. *Id*. When the sufficiency of the evidence is challenged on appeal, this Court reviews the circuit court's ruling on the last occasion when the sufficiency of the evidence was challenged before the trial court. *Id*. In the case *sub judice*, Higgins moved for a directed verdict at the close of the prosecution's case in chief, and his motion was denied. Thereafter, Higgins proceeded to put on his own defense. Consequently, Higgins is procedurally barred from seeking review of the legal sufficiency of the State's evidence at the time his motion was considered (i.e., at the close of the prosecution's case in chief). *Whitehurst v. State*, 540 So.2d 1319, 1327 (Miss.1989). However, "[b]y offering evidence of his own, the defendant in no way waive[d] the right to challenge the sufficiency or weight of the evidence in the event of an adverse jury verdict." *Wetz*, at 808.

*Higgins v. State*, 725 So.2d 220, 224 (Miss. 1998). Here, the Birkleys moved for a directed verdict at the close of the State's case-in-chief. The trial judge denied the motion. They proceeded to put on their own defense and are therefore procedurally barred from seeking review of the legal sufficiency of the State's evidence at the time their motion for directed verdict was considered. This issue is procedurally barred but this Court also finds that from the record there was sufficient evidence to present the case to the jury, as will be discussed in Issue III, and therefore Issue II is without merit.

## III. THE TRIAL COURT ERRED IN NOT GRANTING THE DEFENDANTS' REQUEST FOR A DIRECTED VERDICT AT THE CLOSE OF ALL OF THE

**EVIDENCE OR IN NOT GRANTING SOME OR ALL OF THE REQUESTED INSTRUCTIONS D-1A, D-2A, D-3A, D-4A, AND D-5A.**

¶35. The Birkleys argued again prior to jury instructions that the evidence was insufficient and moved for a directed verdict which was denied. The State argued that the evidence, viewed in the light most favorable to the State, was sufficient to support a verdict of guilty. This Court has stated:

> The standard of review in judging the sufficiency of the evidence on motion for directed verdict requires that we accept as true all evidence favorable to the State, together with reasonable inferences arising therefrom, to disregard the evidence favorable to the defendant, and if such evidence would support a verdict of guilty beyond a reasonable doubt, the trial court's denial of the motion must be affirmed. *White*, 566 So.2d at 1259 (quoting *Boyd v. State*, 523 So.2d 1037, 1040 (Miss.1988); *Stever v. State*, 503 So.2d 227, 230 (Miss.1987); *Haymond v. State*, 478 So.2d 297, 299 (Miss.1985)).

*Turner v. State*, 721 So.2d 642, 648 (Miss.1998).

¶36. In the case *sub judice*, the State presented the testimony of Speed who identified Johnny Birkley in the courtroom and in a photo lineup as the suspect who was wearing a cap that matched the same descriptions as the suspect arrested at the Huddle House. Andrew Gilmore testified that Dennis Birkley confessed to him that he shot someone and proceeded to describe the events in detail. The description of the suspects, shortly after the assault, matched the description of the Birkleys when they were arrested at the Huddle House.

¶37. Thus, following the applicable standard of review, we find that the evidence presented by the State was sufficient to support the jury's verdict and warrant the trial court denying the Birkleys' motion for directed verdict. As a result, this assignment of error is without merit.

¶38. The Birkleys moved for a J.N.O.V. or, in the alternative, a new trial. We have outlined the necessary steps the court must take to address the issues involved with a directed verdict and a JNOV:

> This Court must review the trial court's finding regarding sufficiency of the evidence at the time the motion for JNOV was overruled. See *Wetz v. State*, 503 So.2d 803, 807-08 (Miss.1987). The evidence is viewed in the light most favorable to the State. All credible evidence supporting the conviction is taken as true; the State receives the benefit of all favorable inferences reasonably drawn from the evidence. *McClain v. State*, 625 So.2d 774, 778 (Miss.1993). Issues regarding weight and credibility of the evidence are for the jury to resolve. *Id*. Only where the evidence, as to at least one of the elements of the crime charged, is such that a reasonable and fair minded jury could only find the accused not guilty, will this Court reverse. *Id*. "The standard of review of a post-trial motion is abuse of discretion." *Flowers v. State*, 601 So.2d 828, 833 (Miss.1992) (citing *Robinson v. State*, 566 So.2d 1240, 1242 (Miss.1990)). This Court will order a new trial only when it is convinced that the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice. *McNeal v. State*, 617 So.2d 999, 1009 (Miss.1993); *Burrell v. State*, 613 So.2d 1186, 1191 (Miss.1993). In determining whether a jury verdict is against the overwhelming weight of the evidence, just as when determining whether a peremptory instruction is proper, this Court accepts as true all evidence which supports the verdict and will reverse only when convinced that the trial court has abused its discretion in failing to grant a new trial. *Allred v. State*,

605 So.2d 758, 760 (Miss.1992); *Nicolaou v. State*, 612 So.2d 1080, 1083 (Miss.1992). Factual disputes are properly resolved by the jury and do not mandate a new trial. *McNeal*, 617 So.2d at 1009.

*Eakes v. State*, 665 So.2d 852, 872 (Miss.1995). This Court finds that no "unconscionable injustice" is sanctioned by allowing the jury verdict to stand and that the trial court did not abused its discretion in denying the post-trial motion. This assignment of error is without merit.

### IV. THE VERDICT OF THE JURY WAS SUCH AS TO INDICATE THAT THE JURY CLEARLY DID NOT UNDERSTAND AND/OR FOLLOW THE COURT'S INSTRUCTIONS; THEREFORE, EVIDENCING PREJUDICE UPON THE PART OF THE JURY.

¶39. "Our trial system proceeds on the assumption that jurors are possessed of sufficient intelligence and integrity that, once sworn, they may be counted upon to follow instructions given by the court." *Jackson v. State*, 551 So.2d 132, 138 (Miss.1989). Jury instructions are not reviewed in isolation but are read as a whole to determine whether the jury has been correctly instructed. *Malone v. State*, 486 So.2d 360, 365 (Miss. 1986). The Birkleys specifically objected to Instruction D-7A in weighing the testimony of Andrew Gilmore. Instruction D-7A stated:

> A person criminally involved with others in a crime is an accomplice. The testimony of an accomplice is to be considered and weighed with great care and caution and suspicion. You may give it such weight and credit as you deem it is entitled.

¶40. The Birkleys submitted Instruction D-7A, and it was given to the jury. "The language of the challenged instruction is in conformance with the rule that 'uncorroborated testimony [of an accomplice] should be viewed with great caution and suspicion and it must be reasonable and not improbable or self-contradictory or substantially impeached.' *Thomas v. State*, 340 So.2d 1, 2 (Miss.1976)." *Robinson v. State*, 465 So.2d 1065, 1069 (Miss. 1985). The record reflects that one of the suspects was wearing a red or maroon-like jacket and that a suspect fitting this description was picked up at the Huddle House wearing a red, bulky shirt. Dennis Birkley, who fit the description sent out over the police radio dispatch, was with a second suspect, Johnny Birkley, who fit the other description. Johnny Birkley had on a leather cap and had bucked teeth. Dennis Birkley was found with $123.00 on his person, and there was testimony that Dennis Birkley confessed to Andrew Gilmore that he had committed the crime. There was also testimony from a police officer that the victims had told the officer during the investigation that one of the individuals had a firearm and was wearing a maroon jacket. The Birkleys contend that the verdict of the jury was contrary to the overwhelming weight of the evidence and based upon the testimony of an accomplice which should be viewed with caution and suspicion. It is the opinion of this Court that the lower court was not in error in overruling the motion for a directed verdict and that the evidence in the case *sub judice* presented a guilt issue for the jury. From the record, the evidence supports the finding by the jury and that the verdict was not contrary to the overwhelming weight of the evidence. This assignment of error is without merit.

### V. THE CUMULATIVE ERRORS IN THIS CASE REQUIRE THAT THE CONVICTION AND SENTENCE BE REVERSED.

¶41. All of the Birkleys' assigned errors are without merit, have been addressed, and do not warrant a

reversal of the convictions. The question under these and other cases is whether the cumulative effect of all errors committed during the trial deprived the defendant of a fundamentally fair and impartial trial. Where there is "no reversible error in any part, . . . there is no reversible error to the whole." *McFee v. State*, 511 So.2d 130, 136 (Miss.1987). We have examined each one of the Birkleys' complaints and have determined that all of the assignments of error lack merit. Therefore, this Court further concludes that the cumulative effect of any alleged errors do not merit reversal of the trial court's judgment.

### VI. THE TRIAL COURT ERRED IN THE SENTENCING OF DENNIS BIRKLEY, PARTICULARLY IN PENALIZING DENNIS BIRKLEY FOR EXERCISING HIS RIGHT TO A JURY TRIAL IN THIS CASE.

¶42. "A sentence imposed on a defendant will not be reviewed if the sentence is within the limit prescribed by statute." *Martin v. State*, 635 So.2d.1352, 1355 (Miss. 1994) (citing *Ainsworth v. State*, 304 So.2d 656, (Miss. 1975).

¶43. In *Pearson v. State*, 428 So.2d 1361, 1364-65 (Miss. 1983), we addressed this issue:

> We wish to emphasize the absolute nature of the right of a person charged with a crime to trial by jury. This right is secured to every citizen by the Sixth and Fourteenth Amendments to the Constitution of the United States. It is secured to every Mississippian by Article 3, Section 26 of the Mississippi Constitution of 1890. As a right, it is an entitlement of every individual which he or she may claim no matter how inconvenient society or its members or its courts may deem it.

> It is absolutely impermissible that a trial judge imposing sentence enhance the sentence imposed because the defendant refused a plea bargain and put the state and the court to the trouble of trial by jury. Plea bargaining most assuredly is a valuable practice. See *Bordenkircher v. Hayes*, 434 U.S. 357, 361-362, 98 S.Ct. 663, 666-667, 54 L.Ed.2d 604, 609-610 (1978); *Salter v. State*, 387 So.2d 81, 83-84 (Miss.1980). Both the prosecution and the defense--and the courts as well--have an interest in the continuance of that practice. As in civil matters, not infrequently the prosecution and the defense can negotiate a more tolerable result than might be effected through plenary trial on the merits before a jury. Still, as important as these interests are, they may never justify penalizing one charged with a crime for claiming his absolute right to be tried by a fair and impartial jury of his peers.

> There is no presumption that a convicted felon merits the maximum sentence authorized by law, that anything he gets less than the maximum is to be construed as leniency, a matter of grace. Individualized consideration of the offense and the offender are established hallmarks of our criminal sentencing process. Absent substantial aggravating circumstances frequently including a record of substantial criminal involvement in the past, few offenders receive maximum sentences. This is as it should be in a society which recognizes that vengefulness is seldom the product of maturity, that mercy is not a sign of weakness.

> The implementation and enforcement of the no enhancement rule recognized in *Fermo* and *Williamson* and re-emphasized here necessarily falls upon the circuit judges of this state. Their integrity, we are confident, is such that the rule is in good hands.

We continued by stating that trial judges are cautioned to "remain aloof from the plea bargain negotiations by refraining from direct involvement or participation therein." *Id*. at 1365 n.2 (citing *Fermo v. State*, 370

So.2d 930, 933 (Miss. 1979)). The circuit judge should be advised of the defendant's prior record, if the case is going to be plea bargained, before he is asked to approve the plea bargain. *Id*. at 1365.

¶44. There is no indication in the record that the trial judge enhanced the sentence of one defendant over the other. There is no indication in the record that the trial judge interjected herself improperly in pretrial plea bargain negotiations. In fact, counsel for Dennis Birkley discussed with the judge at one point that he apologized for saying that Samuel Gilmore had made a deal with the State. He said that the court file reflected a petition to enter a plea by Samuel Gilmore as to the armed robbery. The judge responded by saying that the Court had not taken the pleas and had no knowledge of them. The judge was within the discretion allowed by Miss. Code Ann., §§ 97-3-7 & -79 (1994 & Supp. 1999). Dennis Birkley was found guilty on two counts of aggravated assault and one count of armed robbery, and sentenced to serve fifteen years on each aggravated assault count and twenty years on the armed robbery count, to run concurrently. Johnny Birkley was found guilty on two counts of aggravated assault, and sentenced to serve fifteen years on each count, to run concurrently. The statute provides that the sentence for armed robbery, when set by the judge, shall be for any term of imprisonment not less than three (3) years. Id. § 97-3-79. The statute for aggravated assault provides that the sentence could be not more than one (1) year in the county jail or not more than twenty (20) years in the custody of the MDOC. Id. § 97-3-7(2). Samuel Gilmore pled guilty to one count of armed robbery and was given a sentence of ten (10) years with one suspended. Andrew Gilmore pled to being an accessory after the fact and was sentenced to five (5) years with one suspended. The judge's sentences were within the statutory limits, and there is no record of abuse of discretion. This issue is without merit.

<u>CONCLUSION</u>

¶45. This Court finds that the Birkleys' constitutional right to a speedy trial was not violated and the other alleged assignments of error are without merit. Therefore the judgment of the Washington County Circuit Court is affirmed.

¶46. **AS TO JOHNNY BIRKLEY: COUNT II: CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF FIFTEEN (15) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH CONDITIONS AND COSTS, AFFIRMED. COUNT IV: CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF FIFTEEN (15) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AND COSTS, AFFIRMED. COUNT II IS TO RUN CONCURRENTLY WITH COUNT IV.**

**AS TO DENNIS BIRKLEY: COUNT II: CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF FIFTEEN (15) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH CONDITIONS AND COSTS, AFFIRMED. COUNT III: CONVICTION OF ARMED ROBBERY AND SENTENCE OF TWENTY (20) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AND COSTS, AFFIRMED. COUNT IV: CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF FIFTEEN (15) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED. COUNT II IS TO RUN CONCURRENTLY WITH COUNTS III AND IV.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., BANKS, SMITH,**

**MILLS AND WALLER, JJ., CONCUR. McRAE, J., CONCURS IN RESULT ONLY.**