952 So.2d 187 (2006)
Phelan Terrell GUICE, Appellant
v.
STATE of Mississippi, Appellee.
No. 2004-KA-01931-COA.
Court of Appeals of Mississippi.
January 24, 2006.
Rehearing Denied May 2, 2006.
*189 Joshua Aaron Turner, Merrida Coxwell, attorneys for appellant.
Office of the Attorney General by Jeffrey A. Klingfuss, attorney for appellee.
Before LEE, P.J., IRVING and CHANDLER, JJ.
IRVING, J., for the Court.
¶ 1. Phelan Guice was convicted of aggravated assault with a weapon by a Hinds County Circuit Court jury, and the court sentenced him to serve twenty years in the custody of the Mississippi Department of Corrections. Guice appeals and asserts the following errors: (1) violation of his constitutional and statutory rights to a speedy trial, (2) ineffective assistance of counsel, (3) denial of his fundamental right to submit an alternate theory of his case to the jury, and (4) denial of his Sixth and Fourteenth Amendments right to cross-examination.
¶ 2. Finding no error, we affirm.

FACTS
¶ 3. On the evening of September 2, 2001, a person came to the Bolles's residence. Anita Bolles answered the door, and the man at the door asked to speak with her brother, Clarence "Brian" Bolles, Jr. After hearing the doorbell ring, Brian proceeded to go answer the door, not knowing that his sister had already answered it. When Brian reached the door, the visitor pulled out a gun and began shooting. Brian suffered a gunshot wound to the abdomen, while Anita escaped unharmed.
¶ 4. Anita Bolles was able to pick out her brother's assailant from a police photographic line-up. She identified Guice as the person who came to their house on the evening of September 2, 2001, and shot her brother.
¶ 5. At trial, Guice testified that he did not shoot Brian. He also testified that he was at his grandmother's house in Yazoo City on the evening of the incident. Guice further testified that there were no witnesses who could substantiate his claim that he was out of town when the incident occurred.
¶ 6. Additional facts, as necessary, will be related during the discussion of the issues.

ANALYSIS AND DISCUSSION OF THE ISSUES
(1) Constitutional and Statutory Rights to a Speedy Trial
¶ 7. Guice asserts that he was denied his constitutional and statutory rights to a speedy trial.
(a) Constitutional Right
¶ 8. "The constitutional right to a speedy trial attaches at the time of formal indictment, information, or arrest." Birkley v. State, 750 So.2d 1245, 1249 (¶ 11) (Miss.1999) (quoting Smith v. State, 550 So.2d 406, 408 (Miss.1989)). The Mississippi Supreme Court utilizes the balancing test set forth in Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) to determine whether a defendant has been constitutionally denied a speedy trial. "The factors to be considered are: (1) length of delay, (2) reason for the delay, (3) whether the defendant has asserted his right to a speedy trial, and (4) whether the defendant was prejudiced by *190 the delay." Birkley, 750 So.2d at 1249(¶ 11) (quoting Barker, 407 U.S. at 530, 92 S.Ct. 2182).
(1) Length of Delay
¶ 9. The analysis of the Barker factors begins with the first factor, length of delay, which operates as a triggering mechanism. Id. at (¶ 13) (citing Simmons v. State, 678 So.2d 683, 686 (Miss.1996)). The time elapsing from the date of Guice's arrest, September 14, 2001, to the beginning day of his trial, May 3, 2004, was over thirty-one months. "Any delay of eight months or longer is presumptively prejudicial." Id. at (¶ 14) (quoting Simmons, 678 So.2d at 686). "If the delay complained about is not presumptively prejudicial, the analysis goes no further." Jaco v. State, 574 So.2d 625, 630 (Miss.1990). In this case, the time lapse of over thirty-one months is presumptively prejudicial, thereby necessitating a further analysis of the remaining Barker factors.
(2) Reason for the Delay
¶ 10. "Once we find the delay is presumptively prejudicial, the burden shifts to the prosecution to produce evidence justifying the delay and to persuade the trier of fact of the legitimacy of the reasons." Birkley, 750 So.2d at 1250 (¶ 15) (quoting State v. Ferguson, 576 So.2d 1252, 1254 (Miss.1991)). "However, presumptive prejudice alone is insufficient to allow the defendant to prevail on speedy trial grounds." Id. (quoting Hurns v. State, 616 So.2d 313, 317 (Miss.1993)). In Barker, the United States Supreme Court stated:
Closely related to the length of delay is the reason the government assigns to justify the delay. . . . A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.
Barker, 407 U.S. at 531, 92 S.Ct. 2182.
¶ 11. The record reveals no reasons for the delay. Guice does not offer any reasons for the delay, nor does he contend that the State engaged in a deliberate attempt to delay the trial in order to hamper his defense. The State never gave any reason for the delay. The State simply contends that, from a review of the record, it appears that much of the delay can be contributed to Guice trying to obtain counsel, failing to obtain counsel, and trying to dismiss counsel. However, the State's claim is unsubstantiated because nothing in the record remotely suggests that Guice was the reason for any of the delay. "Where the accused has not caused the delay, and where the prosecution has failed to show good cause therefor [sic], this factor weighs in favor of the accused." Ferguson, 576 So.2d at 1254 (citing Handley v. State, 574 So.2d 671, 676 (Miss. 1990)). Therefore, we find that this factor weighs in favor of Guice and against the State.
(3) Defendant's Assertion of Right to a Speedy Trial
¶ 12. The next factor we consider is the defendant's assertion of his right to a speedy trial. "Although it is the State's duty to insure that the defendant receives a speedy trial, a defendant has some responsibility to assert this right. Failure to assert this right will make it difficult for a defendant to prove that he was denied a speedy trial." Taylor v. State, 672 So.2d *191 1246, 1261 (Miss.1996). A defendant "has no duty to bring himself to trial. . . . Still he gains more points under this prong of the Barker test where he has demanded a speedy trial." Brengettcy v. State, 794 So.2d 987, 994(¶ 17) (Miss.2001) (quoting Jaco, 574 So.2d at 632).
¶ 13. There is no evidence in the record that Guice demanded a speedy trial from the circuit court. The only filing in the record that hints to Guice's assertion of a right to a speedy trial is his motion to dismiss charges for failure to provide a fast and speedy trial, which was filed February 5, 2004. However, a demand for dismissal for violation of the right to a speedy trial is not the equivalent of a demand for a speedy trial. See Perry v. State, 637 So.2d 871, 875 (Miss.1994). Moreover, even if this Court were to assume that his motion sufficed as an assertion of his right to a speedy trial, Guice's own words would contradict this assumption. In talking with the trial court, Guice said, "Your honor, the thing about the speedy trial, I was not asking for a speedy trial. I was asking for my charges to be dismissed on the grounds of a violation of a speedy trial." Since Guice never asserted his right to a speedy trial, we find that this factor weighs against him.
(4) Prejudice to the Defendant
¶ 14. "The final factor is prejudice against the defendant. When the length of delay is presumptively prejudicial, the burden of persuasion is on the State to show that the delay did not prejudice the defendant." Ferguson, 576 So.2d at 1254. "Nevertheless, if the defendant fails to show actual prejudice to his defense, this prong of the Barker balancing test cannot weigh heavily in his favor." Polk v. State, 612 So.2d 381, 387 (Miss.1992)(overruled on other grounds). "Prejudice to the defendant may manifest itself in two ways. First, the delay may actually impair the accused's ability to defend himself. Second, the defendant may suffer because of the restraints to his liberty, whether it be the loss of his physical freedom, loss of job, loss of friends or family, damage to his reputation, or anxiety." Stevens v. State, 808 So.2d 908, 917(¶ 24) (Miss.2002) (citing Duplantis v. State, 708 So.2d 1327, 1336(¶ 22) (Miss.1998)).
¶ 15. Guice argues that he was in continuous confinement from his arrest until trial. However, Guice does not set forth any specific prejudice or problems that resulted from his incarceration. "A defendant's assertion of prejudice attributable solely to incarceration, with no other harm, typically is not sufficient to warrant reversal." Williamson v. State, 512 So.2d 868, 877 (Miss.1987)(overruled on other grounds); see also Russell v. Lynaugh, 892 F.2d 1205, 1215 (5th Cir.1989) (the accused could not claim that a longer period of incarceration compounded his anxiety, since he was already serving a sentence for another crime). Furthermore, Guice does not assert that his defense suffered any prejudice because of his lengthy incarceration. He generally states that an accused's defense may be impaired by a lengthy delay; however, he does not cite any way in which his defense was so prejudiced. He does not contend that witnesses were unavailable because of the delay or that evidence had been lost or destroyed or that his defense against the charges was affected in any way by the delay. In short, there is no evidence of actual prejudice to Guice. His only claim of prejudice stems from his incarceration and the stress and anxiety resulting from the prospect of facing justice. Therefore, we find that this factor weighs in the State's favor.
¶ 16. In conclusion, based upon the analysis of the four Barker factors, we find *192 that there was no violation of Guice's constitutional right to a speedy trial.
(b) Statutory Right
¶ 17. Mississippi's speedy trial statute provides, "Unless good cause be shown, and a continuance duly granted by the court, all offenses for which indictments are presented to the court shall be tried no later than two hundred seventy (270) days after the accused has been arraigned." Miss.Code Ann. § 99-17-1.
Under this provision, where the accused is not tried within 270 days of his arraignment, the defendant is entitled to dismissal. However, continuances for "good cause" toll the running of the 270-day period, unless the record is silent regarding the reason for the delay, and then the clock ticks against the State because the State bears the risk of non-persuasion on the good cause issue. A written order stating that a motion for continuance is well taken and should be granted is the equivalence of a judicial determination that good cause exists. Continuances attributable to the defendant stop the running of the clock and are deducted from the total number of days before trial in determining whether the 270-day rule applies.
Reynolds v. State, 784 So.2d 929, 933(¶ 12) (Miss.2001) (citations omitted).
¶ 18. A total of 550 days elapsed from the time Guice was arraigned on October 30, 2002, to the start of his trial on May 3, 2004. Therefore, from a temporal standpoint, the State failed by 280 days to comply with its statutory obligation to bring Guice to trial. As stated earlier in this opinion, the record reveals nothing which might explain the reason for the delay, nor is there any evidence of continuances requested by or granted to either party. Consequently, we have a clear violation of the statute requiring that a defendant be brought to trial within 270 days of arraignment.
¶ 19. On February 5, 2004, Guice filed a motion to dismiss charges for failure to provide a fast and speedy trial. As the date indicates, the motion was filed well after the expiration of the 270 days of the arraignment. In addition, Guice has not demonstrated any prejudice from the delay occurring between his arraignment and trial. Therefore, even though a clear violation of section 99-17-1 occurred, we hold, based on the authority of Walton v. State, 678 So.2d 645, 650 (Miss.1996), that Guice waived his right to complain about the denial of his statutory right to a speedy trial because he did not assert his right to a speedy trial until well after the deadline had passed. Our holding is further supported by the fact that Guice has shown no prejudice.
(2) Ineffective Assistance of Counsel
¶ 20. In his next assignment of error, Guice argues that his trial counsel rendered ineffective assistance. He specifically contends that his counsel was ineffective in failing to assert his constitutional and statutory rights to a speedy trial and in failing to properly investigate one of the State's witnesses prior to trial.
¶ 21. The standard of review for ineffective assistance of counsel comes from Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Strickland promulgated a two-prong test which was adopted by the Mississippi Supreme Court in Rankin v. State, 636 So.2d 652, 656 (Miss.1994). The Strickland test requires that Guice show: (1) that his counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. Strickland, 466 U.S. at 687, 104 S.Ct. 2052. Accordingly, Guice must show that "but for his attorney's errors, there is a reasonable probability *193 that he would have received a different result in the trial court." Rankin, 636 So.2d at 656 (citing Nicolaou v. State, 612 So.2d 1080, 1086 (Miss.1992)).
(a) Failure to Assert Constitutional and Statutory Rights to a Speedy Trial
¶ 22. It is logical to conclude that Guice's trial counsel erred when she failed to assert his constitutional and statutory rights to a speedy trial. However, the question is: if Guice's counsel would have asserted his constitutional and statutory rights to a speedy trial, is there a reasonable probability that the outcome of the case would have been different? Obviously, the answer depends on whether, if Guice's counsel would have asserted his speedy trial rights, the trial court would have dismissed the charges.
¶ 23. In addressing Guice's ineffective assistance of counsel claim for failure to assert his constitutional right to a speedy trial claim, we once again examine the outcome of our Barker analysis. Guice's trial was delayed for a presumptively prejudicial amount of time, and he failed to assert his right to a speedy trial. Guice's failure to assert this right weighs against him. There was nothing contained in the record to indicate the reason for the delay; this factor weighs against the State. Possibly the most significant factor was that Guice failed to demonstrate how his incarceration and the delay caused him any actual prejudice beyond what is ordinary while awaiting trial. The prejudice prong of the analysis weighs against Guice and in favor of the State. As previously mentioned, Guice waived his right to complain about the denial of his statutory right to a speedy trial because he did not assert this right until well after the statutory deadline had passed. Furthermore, Guice failed to show any actual prejudice resulting from the failure to assert his statutory right to a speedy trial. It is our conclusion that the relevant factors and the facts surrounding the case indicate that Guice's right to a speedy trial was not violated. Therefore, assertion of his constitutional and statutory rights to a speedy trial would not have resulted in a different outcome to the case. This issue is without merit.
(b) Failure to Investigate the State's Witness
¶ 24. We now address Guice's other claim that his trial counsel was ineffective for failing to properly investigate the State's expert witness, Byron McIntire. McIntire worked in firearms identification for the Mississippi Crime Laboratory, and he was the person who performed tests on the projectiles that were removed from Brian's abdomen. The sole purpose for McIntire's testimony was to inform the jury that tests revealed that the projectiles were consistent with those fired from a nine millimeter handgun. This piece of information was important to the State's case because Guice was charged with assaulting Brian with a weapon, more specifically a nine millimeter handgun.
¶ 25. We note that Guice's counsel vigorously objected and argued at length that the conclusions within McIntire's report should not be communicated to the jury because the defense only received a copy of the report the day before the trial began. Nevertheless, the court overruled the objection and allowed McIntire to testify about the information contained in his report. As previously noted, Guice argues that his trial counsel was ineffective for not "engaging" or "investigating" McIntire until the day of the trial. It is true that Guice's counsel knew in advance that McIntire would be called as a witness for the State, but we fail to see what more she could have done to aid Guice's defense.
¶ 26. The record reveals the fact that the State sent the projectiles to *194 McIntire on April 28, 2004. McIntire performed tests on the projectiles and submitted a report on his findings to the prosecution on May 3, 2004. The defense received a faxed copy of the report on May 3, 2004, a day before the start of Guice's trial. Given the circumstances, Guice's trial counsel properly responded by making the following argument to the court: "Your Honor, the report was not requested until April 28th. The DA's office has had the case for sometime. It ties us up and bogs us down with this particular expert opinion and we ask the court to prohibit them from being able to offer that expert opinion." This argument was made to no avail. Furthermore, given the fact that Guice's defense was that he did not shoot Brian because he was out of town when the incident occurred, we fail to see how a failure to "properly investigate" McIntire hampered his defense in any way. Such actions by trial counsel will seldom, if ever, constitute ineffective assistance of counsel because "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Strickland, 466 U.S. at 691, 104 S.Ct. 2052.
(3) Alternate Theory of the Case and Cross-Examination
¶ 27. In his final points of error, Guice argues that the trial court erred when it denied him the opportunity to submit an alternate theory of his case to the jury and denied him the opportunity to cross-examine one of the State's witnesses. Since both of Guice's arguments are predicated on the fact that the court erred in not allowing him to ask Anita Bolles about her involvement with Mario Jones or Mario's possible involvement in the shooting, we combine these issues and address them together.[1]
¶ 28. We note from the outset that Guice was not actually denied the right to cross-examine Anita. Guice's counsel got Anita to admit that she did not really get a good look at the person who was at the door. Anita also admitted that she picked out a person from the police photographic line-up that "resembled" the person who came to their house asking for Brian. Anita further admitted during the trial that she could not say with absolute certainty that Guice was the person who came to their residence and shot Brian. Through effective cross-examination, Guice's counsel was able to attack the credibility of Anita's testimony. Therefore, in actuality, Guice was not denied the right to cross-examine Anita, he was only denied the right to pursue a line of questioning that the court ruled was not relevant to the issues at hand.
¶ 29. We clearly recognize that Mississippi law dictates that a defendant is entitled to have an alternate theory of his case submitted to the jury. In Love v. State, 441 So.2d 1353, 1356 (Miss.1983), the Mississippi Supreme Court held that:

*195 [L]itigants in all cases, including defendants in criminal prosecutions, are entitled to assert alternative theories, even inconsistent alternative theories. A criminal defendant is entitled to present his defense to the finder of fact, and it is fundamentally unfair to deny the jury the opportunity to consider the defendant's defense where there is testimony to support the theory.
Therefore, based upon established Mississippi case law, Guice should have been allowed to present an alternate theory of his case that Mario could have been the person who actually shot Brian  to the jury. As support for his alternate theory, Guice should have been allowed to question Anita about her involvement with Mario or Mario's possible involvement in the shooting. However, had Guice actually desired to present an alternate theory of his case to the jury, our resolution of his appeal may have been different. Guice, in his own words to the court, contradicts the arguments and assertions of his appellate counsels. In speaking with the court about conflicts of interest that he was having with his trial counsel, Guice said:
And, as I said, the conflict of interest goes to another thing, not just by the motion being filed for the violation of my rights to a speedy trial. . . . [W]hat she was explaining to me, your honor, was that my cousin Mario  to make him look as an enemy in this case. Now, if we were to bring up Mario in this case, it would be to my betterment for him to explain why would the court suggest that I had something to do with the crime that was committed.
Consequently, we find that we cannot reverse and remand a case with instructions for the trial court to permit Guice to submit an alternate theory of his case to the jury when he never wanted one submitted in the first instance. This issue is without merit.
¶ 30. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY OF CONVICTION OF AGGRAVATED ASSAULT WITH A WEAPON AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR. SOUTHWICK AND ROBERTS, JJ., NOT PARTICIPATING.
NOTES
[1] Once again, Anita was Brian's sister. She was the one who answered the door when the shooter came to the Bolles's residence asking for Brian. Mario was a former boyfriend with whom Anita had a child. Apparently Mario and Brian previously had some type of altercation at the daycare center where Anita's child attended. The record reveals that Anita gave a statement to the police in which she stated that Mario had driven by her house on the day of the incident, waiving a gun at her brother and that he had called her house shortly before the shooting and made threats.