874 So.2d 1000 (2004)
Earl ANDERSON, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2002-KA-01586-COA.
Court of Appeals of Mississippi.
March 9, 2004.
Rehearing Denied June 1, 2004.
*1002 Greta Regina Johnson, attorney for appellant.
Office of the Attorney General by Jean Smith Vaughan, attorney for appellee.
Before McMILLIN, C.J., IRVING and MYERS, JJ.
IRVING, J., for the Court.
¶ 1. Earl Anderson was convicted in the Circuit Court of Holmes County of aggravated assault and possession of a firearm by a convicted felon. He was sentenced to consecutive terms of ten and three years, respectively, in the custody of the Mississippi Department of Corrections. Feeling aggrieved by the judgment of the Holmes County Circuit Court, Anderson prosecutes this appeal, arguing that the trial court erred in failing to grant his motion for a directed verdict and in admitting certain documentary evidence of a Florida conviction. He also argues that he was denied a right to a fair and speedy trial.
¶ 2. Ascertaining no reversible error, we affirm Anderson's conviction and the judgment of the circuit court.

*1003 FACTS
¶ 3. During the early hours of February 5, 2000, a shooting occurred at Fly's Fish House in Holmes County. The victim, Cardell Walker, was shot once in the stomach.
¶ 4. On or about February 7, 2000, Anderson was arrested in connection with the shooting at Fly's and charged with aggravated assault. He was indicted on June 28, 2000, for aggravated assault and simple assault upon a police officer and was arraigned on both charges on August 30, 2000.[1] On September 25, 2000, Anderson was reindicted and arraigned for aggravated assault and for a new charge of possession of a firearm by a convicted felon. The charge of simple assault upon a police officer was not contained in the new indictment.
¶ 5. Other pertinent facts will be discussed later in this opinion.
1. Denial of Motion for Directed Verdict
¶ 6. Anderson first asserts that the trial court erred when it denied his motion for a directed verdict because the evidence of his guilt of aggravated assault was insufficient.
¶ 7. "The standard of review for a denial of a directed verdict, peremptory instruction and a JNOV are identical." Hawthorne v. State, 835 So.2d 14, 21(¶ 31) (Miss.2003) (citing Coleman v. State, 697 So.2d 777, 787 (Miss.1997)). A motion for a JNOV, a directed verdict, and a request for a peremptory instruction challenge the legal sufficiency of the evidence. McClain v. State, 625 So.2d 774, 778 (Miss.1993). On the issue of legal sufficiency, reversal can only occur when the evidence of one or more of the elements of the charged offense is such that "reasonable and fairminded jurors could only find the accused not guilty." Hawthorne, 835 So.2d at 21(¶ 31) (citing Wetz v. State, 503 So.2d 803, 808 (Miss.1987)). "Since a motion for JNOV, motion for directed verdict, and a request for peremptory instruction all require consideration of the evidence before the court when made, [an appellate court] properly reviews the ruling on the last occasion the challenge was made in the trial court." Id. (citing McClain, 625 So.2d at 778).
¶ 8. In our present case, Anderson was charged with aggravated assault under Mississippi Code Annotated section 97-3-7(2) (Rev.2000), which reads:
A person is guilty of aggravated assault if he (a) attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life; or (b) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm.
¶ 9. Anderson argues that the evidence in the case sub judice was insufficient to demonstrate that he was guilty of aggravated assault. Anderson proclaims that he testified throughout trial that he was not at Fly's at the time of the shooting of Cardell Walker. He explains that he was at his mother's house for several hours on the evening of February 4, 2000, and that around midnight, he decided to go to Fly's to get something to eat. Anderson states that, upon his arrival at the restaurant, he observed police cars and an ambulance but *1004 that he did not know what had transpired at the scene. He explains that he then left Fly's, went elsewhere to get something to eat, and returned home.
¶ 10. Despite Anderson's arguments, this Court finds that sufficient evidence existed to support his guilt of aggravated assault. Walker, the victim, testified that he had gone to Fly's in the early morning hours of February 5, 2000, to order shrimp. He stated that while he was at the restaurant, Anderson approached him and inquired as to the whereabouts of Walker's brother, Ricky. According to Walker, he informed Anderson that he did not know the location of his brother. Walker further explained that Anderson persisted in inquiring about his brother but that he began to ignore Anderson. Walker stated that Anderson soon after pulled a gun in an attempt to rob him, whereupon the gun was discharged. He explained that Anderson kept shooting at him stating, "I'm going to kill you." Walker testified that, in an effort to escape, he began to run toward the restaurant's door, but before he reached it, Anderson shot him in the stomach. Upon being shot, Walker explained that he grabbed a chair from a table, threw it at Anderson, and darted out of the door. He further testified that Anderson continued to shoot at him after he had escaped from the restaurant. Walker also testified that he had no weapon on him during the incident.
¶ 11. Additionally, several witnesses not only placed Anderson at the scene of the crime but confirmed that he shot Walker. Jimmy Young testified that he was at Fly's in the early morning hours of February 5, 2000, to order some food and witnessed an argument between Walker and Anderson. He testified that he saw Anderson pull a pistol although he did not see the shooting. However, he saw Walker shortly after Walker was shot.
¶ 12. Willie Davis, an employee at a BP gas station in Lexington, testified that Anderson came by his station the day after the shooting. According to Davis, Anderson asked him whether he had heard about his confrontation with Walker and told Davis that he had shot Walker the night before. Davis also testified that Anderson inquired as to the whereabouts of Ricky, Walker's brother.
¶ 13. Lenwood Genous, a deputy sheriff with the Holmes County Sheriff's Department, testified that when he telephoned Anderson about turning himself in after a warrant had been issued for Anderson's arrest, Anderson confessed to shooting Walker at Fly's.
¶ 14. It is the function of the jury to accept the testimony of some witnesses and not others. Kircher v. State, 753 So.2d 1017, 1029(¶ 56) (Miss.1999). Our supreme court has stated in numerous cases that when the evidence is conflicting, the jury will be the sole judge of the credibility of witnesses and the weight and worth of their testimony. Id. Viewing the evidence in the light most favorable to the verdict, as indeed we must, compels this court to conclude that the evidence presented against Anderson was more than ample to convict him of aggravated assault.
2. Evidence of Previous Convictions
¶ 15. Anderson next contends that the trial court erroneously admitted a certified document into evidence to prove that he was a convicted felon without adequately proving that the crimes listed in that document were in fact felonies. He concludes that the circuit court abused its discretion and allowed the jury to only infer that the crimes were felonies.
¶ 16. "[T]he admissibility of evidence rests within the trial court's discretion. However, this discretion must be exercised *1005 within the confines of the Mississippi Rules of Evidence. [An appellate court] will only reverse the ruling of a trial court where such discretion has been abused and a substantial right of a party has been affected." Murray v. State, 849 So.2d 1281, 1288(¶ 24) (Miss.2003).
¶ 17. In the case sub judice, the State charged Anderson with possession of a firearm by a convicted felon pursuant to Mississippi Code Annotated § 97-37-5 (Rev.2000), which reads:
It shall be unlawful for any person who has been convicted of a felony under the laws of this state, any other state, or of the United States to possess any firearm... unless such person has received a pardon for such felony, has received a relief from disability pursuant to Section 925(c) of Title 18 of the U.S.Code, or has received a certificate of rehabilitation pursuant to subsection (3) of the section.
¶ 18. To satisfy the "convicted felon" portion of this charge, the State introduced a certified copy of Anderson's Florida criminal conviction report which listed three Florida crimescarrying a concealed firearm, battery of a law enforcement officer, and depriving an officer of a weapon or radioof which Anderson was allegedly convicted. On the criminal conviction report, under the heading "Degree of Crime," the crimes were described as "F3." Also, the Florida statute for each crime was listed in the criminal conviction report.
¶ 19. Anderson objected that the criminal report failed to clearly indicate that he had been convicted of a felony. In response to Anderson's objection, the State offered a National Crime Information Computer (NCIC) report which purportedly indicated that the "F3" listings in the criminal report designated felonious crimes. The NCIC report was not admitted into evidence but was marked for identification. The circuit judge took judicial notice of the properly certified criminal conviction report, as well as the NCIC report. In taking judicial notice of the criminal conviction report, the trial judge did not specifically take notice that the "F3" designation listed under the "Degree of Crime" heading meant that the crimes were third degree felonies under Florida law. Also, the trial judge did not instruct the jury in accordance with the requirement of Rule 201(g) of the Mississippi Rules of Evidence regarding judicially-noticed facts.
¶ 20. A review of the Florida statutes listed in the certified criminal conviction report indicates that the crimes listed on Anderson's criminal report are in fact third degree felonies. See Fla. Stat. Ann. § 790.01 (2000) (carrying concealed weapons), § 784.07 (2000) (battery of law enforcement officer), § 843.025 (2000) (depriving officer of means of protection or communication).
¶ 21. We find that the criminal conviction report was properly admitted under Rules 803(22) and 902(4) of the Mississippi Rules of Evidence, and since the NCIC report was not admitted into evidence, we decline to discuss it any further. We further find that the failure of the trial judge to instruct the jury in accordance with the requirement of Rule 201(g) is inconsequential because she did not take judicial notice of any specific fact, just the report itself, and, as we have already noted, the report was properly admitted under other applicable rules of evidence. Thus, there was no need to take judicial notice of the report itself.
¶ 22. We now come to the central question, and that is, whether the evidence satisfied the State's burden to prove that Anderson had previously been convicted of a felony. We conclude that it did. While we agree with Anderson that the jury was *1006 required to infer that the "F3" designation listed under the "Degree of Crime" heading meant that the crimes were in fact felonies, we see nothing improper about the jury performing this function. Indeed, a jury is allowed to consider all logical inferences flowing from the evidence. It seems to us that it is a logical inference that the "F3" designation refers to a felony in the third degree. There are only two broad categories of crimes according to the gravity of the offense, felonies and misdemeanors. Some state criminal codes further define felony status crimes in various degrees, such as first, second, etc.
¶ 23. We note that the jury was instructed regarding its right to draw logical inferences from properly-admitted evidence. The guidance was nestled in a circumstantial evidence instruction which informed the jury that "[c]ircumstantial evidence is evidence that, if found to be true, proves a fact from which an inference of the existence of another fact may be drawn. An inference is a deduction of fact that may logically and reasonably be drawn from another fact or group of facts established by the evidence." We, therefore, find that the State met its burden of proving, by properly-admitted evidence, that Anderson previously had been convicted of a felony.
3. Denial of a Speedy Trial
¶ 24. Anderson next asserts that he was denied his constitutional and statutory rights to a speedy trial.
A. Constitutional Right
¶ 25. "The constitutional right to a speedy trial attaches at the time of a formal indictment, information, or arrest." Birkley v. State, 750 So.2d 1245, 1249(¶ 11) (Miss.1999). Our supreme court utilizes the balancing test set forth in Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) to determine whether a defendant has been denied a speedy trial. Birkley, 750 So.2d at 1249(¶ 11). "The factors to be considered are: (1) length of delay; (2) reason for the delay; (3) whether the defendant has asserted his right to a speedy trial; and (4) whether the defendant was prejudiced by the delay." Id. In weighing these factors, the totality of the circumstances must be considered. Id. at (¶ 12).
(1) Length of Delay
¶ 26. The analysis of the Barker factors begins with the first factor, length of delay, as it operates as a triggering mechanism. Id. at (¶ 13). The time elapsing from the date of Anderson's arrest, February 7, 2000, to the beginning day of his trial, May 15, 2002, was twenty-seven months. Any delay of eight months or more is presumptively prejudicial to the defendant. Id. at (¶ 14). The twenty-seven-month delay in this case is presumptively prejudicial and triggers a further analysis of the Barker factors.
(2) Reason for the delay
¶ 27. Once we find the delay presumptively prejudicial, the burden shifts to the prosecution to produce evidence justifying the delay and to persuade the trier of fact of the legitimacy of these reasons. However, presumptive prejudice alone is insufficient to allow the defendant to prevail on speedy trial grounds. Continuances granted to the State where the State has demonstrated good cause, are not counted against the State.
Id. at 1250(¶ 15) (citations omitted). In Barker, the United States Supreme Court stated:
Closely related to length of delay is the reason the government assigns to justify the delay. Here, too, different weights *1007 should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.
Barker, 407 U.S. at 531, 92 S.Ct. 2182.
¶ 28. The record reveals no reasons for the delay. Anderson does not offer any reasons for the delay, nor does he assert that the State engaged in a deliberate attempt to delay the trial in order to hamper his defense. The State submits that Anderson's filing of his motion to dismiss the indictment caused a delay in the trial. However, the veracity of the State's claim is unsubstantiated because the record exhibits no order from the trial court addressing this motion.
¶ 29. It should suffice to say that the delay occasioned by reindicting Anderson should be charged against the State. At best for Anderson, however, this delay is caused by mere negligence in preparing the original indictment and should not be weighed heavily against the State. See Id. We find that this factor weighs slightly in favor of Anderson.
(3) Defendant's Assertion of Right to a Speedy Trial
¶ 30. The next factor we consider is the defendant's assertion of his right to a speedy trial. "Although it is the State's duty to insure that the defendant receives a speedy trial, a defendant has some responsibility to assert this right. Failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." Taylor v. State, 672 So.2d 1246, 1261 (Miss.1996). A defendant "has no duty to bring himself to trial.... Still he gains far more points under this prong of the Barker test where he has demanded a speedy trial." Brengettcy v. State, 794 So.2d 987, 994(¶ 17) (Miss.2001) (quoting Jaco v. State, 574 So.2d 625, 632 (Miss. 1990)).
¶ 31. There is no evidence in the record that Anderson demanded a speedy trial from the circuit court. The only filing in the record that hints to Anderson's assertion of a right to a speedy trial is his motion to dismiss indictment for violation of speedy trial rights, filed on October 19, 2001. However, a demand for a speedy trial is distinct from a demand for dismissal due to violation of the right to a speedy trial. Id. at 994 (citing Perry v. State, 637 So.2d 871, 875 (Miss.1994)).
¶ 32. Moreover, even if this Court were to assume that his motion sufficed as an assertion of his right to a speedy trial, there is no evidence in the record to suggest that Anderson attempted to obtain a ruling on that motion.
This Court has held that a party is obligated to seek a ruling on an objection or motion. A party making a motion must follow up that action by bringing it to the attention of the judge and requesting a hearing upon it. The movant bears the responsibility to obtain a ruling from the court on motions filed by him and failure to do so constitutes a waiver of same.
Craft v. State, 832 So.2d 467, 471(¶ 10) (Miss.2002).
¶ 33. Since Anderson never asserted his right to a speedy trial, we find that this factor weighs against him.
*1008 (4) Delay's Prejudice to the Defendant
¶ 34. The final factor is prejudice against the defendant. When the length of delay is presumptively prejudicial, the burden of persuasion is on the State to show that the delay did not prejudice the defendant. State v. Ferguson, 576 So.2d 1252, 1254 (Miss.1991). Nevertheless, if the defendant fails to show actual prejudice to his defense, this prong of the Barker balancing test cannot weigh heavily in his favor. Polk v. State, 612 So.2d 381, 387 (Miss.1992).
[P]rejudice to the defendant may manifest itself in two ways. First, the defendant may suffer because of the restraints to his liberty, whether it be the loss of his physical freedom, loss of a job, loss of friends or family, damage to his reputation, or anxiety. Second, the delay may actually impair the accused's ability to defend himself.
Stevens v. State, 808 So.2d 908, 917(¶ 24) (Miss.2002) (citing Duplantis v. State, 708 So.2d 1327, 1336 (Miss.1998)).
¶ 35. Anderson first argues that he was in continuous confinement from his arrest until trial. However, Anderson does not set forth any specific prejudice or problems that resulted from his incarceration. Moreover, our supreme court has held that incarceration alone is not sufficient prejudice to warrant reversal. Birkley, 750 So.2d at 1252(¶ 27).
¶ 36. Secondly, Anderson argues that his defense was hampered by the delay, as a number of witnesses at trial indicated that they did not remember all of the events surrounding this case. He explains that the loss of the witnesses' memories is pertinent because his defense was that he arrived at Fly's after the alleged shooting had occurred. Apparently, Anderson surmises that the witnesses who testified against him had failing memories because they remembered the facts differently than he. In our perusal of the record, we did not find any witness who testified that he did not remember what had happened or that his memory was fuzzy because of the elapse of time. Therefore, we are unconvinced by Anderson's argument that his ability to defend himself was impaired. As stated earlier in this opinion, both Walker and Young placed Anderson at Fly's at the time of the shooting, and Genous testified that Anderson admitted to him that Anderson was at Fly's on the night of the shooting. They were not equivocal in their testimony.
¶ 37. Anderson presented five witnesses besides himself. His first witness was James L. Jones. Jones testified that he arrived at Fly's around 11:00 p.m. on the night of February 4, 2000, and stayed there until after the shooting. He identified Anderson as the person who shot Walker.
¶ 38. Anderson's second witness was his sister, Jean Alice Anderson. Jean testified that somewhere between 10:45 p.m. on the night of February 4 and 12:30 a.m. in the morning of February 5, Anderson came by the house where she and her mother lives. However, she was clear in her testimony that Anderson had left the house by 2:30 a.m. on February 5, 2000. She did not indicate that the passage of time in any way affected her ability to recall the precise time Anderson left.
¶ 39. Leno Homes was Anderson's next witness. Homes testified that at the time of the shooting he was a state trooper working as a Durant police officer. He was not sure of the time that he arrived on the scene of the shooting but he thought it was after midnight on the night of February 4, 2000. When he arrived at the scene, no one was there except the owner of Fly's; therefore, he left.
*1009 ¶ 40. Grant Genous was the next witness to testify for the defense. He testified that he was present at Fly's on the night of February 4, 2000, and that he arrived there between 12 midnight and 1:00 a.m. the next day. He did not see the shooting, as he stayed at Fly's for only approximately ten minutes. However, during his short stay, he did see Anderson there. Anderson's final witness was Johnny L. Johnson, his first cousin, who was a character witness.
¶ 41. We are unable to discern any prejudice to Anderson's defense based on the testimony of the defense witnesses. Like the witnesses for the prosecution, the defense witnesses were clear in their recollection as to what transpired on that tragic February night. None of the witnesses indicated that their recollections of the events of that night was in any way impacted by the passage of time. Therefore, based upon the analysis of the four factors under Barker, we find that there was no violation of Anderson's constitutional right to a speedy trial.
B. Statutory Right
¶ 42. Our speedy trial statute, Mississippi Code Annotated section 99-17-1 (Rev.2000), provides, "Unless good cause be shown, and a continuance duly granted by the court, all offenses for which indictments are presented to the court shall be tried no later than two hundred seventy (270) days after the accused has been arraigned."
Under this provision, where the accused is not tried within 270 days of his arraignment, the defendant is entitled to dismissal. However, continuances for "good cause" toll the running of the 270-day period, unless the record is silent regarding the reason for the delay, and then the clock ticks against the State because the State bears the risk of nonpersuasion on the good cause issue. A written order stating that a motion for continuance is well taken and should be granted is the equivalence of a judicial determination that good cause exists. Continuances attributable to the defendant stop the running of the clock and are deducted from the total number of days before trial in determining whether the 270-day rule applies.
Reynolds v. State, 784 So.2d 929, 933(¶ 12) (Miss.2001) (citations omitted).
¶ 43. A total of 596 days passed from the time Anderson was initially arraigned on September 25, 2000, to the commencement of trial on May 15, 2002. Therefore, from a temporal standpoint, the State failed by 326 days to comply with its statutory obligation to bring Anderson to trial. As explained earlier, the record shows no evidence of continuances requested by or granted to either party, nor is there anything in the record which might explain the reason for the delay. Consequently, we have a clear violation of the statute requiring that a defendant be brought to trial within 270 days of arraignment.
¶ 44. On October 19, 2001, Anderson filed a motion to dismiss the indictment for violation of his speedy trial rights and a motion to dismiss the indictment due to an alleged conflict of interest of the prosecutor. As the date indicates, these motions were filed well after the expiration of 270 days of the arraignment and were never ruled on. Moreover, there is no indication that Anderson ever sought a ruling on the motions. It is a party's duty to obtain rulings on motions and to ensure the completeness of the record. Gayten v. State, 595 So.2d 409, 413 (Miss.1992). Further, Anderson has not demonstrated any prejudice from any delay occurring between his arraignment and trial. Consequently, even though a clear violation of section 99-17-1 occurred, we hold, based on the authority *1010 of Walton v. State, 678 So.2d 645, 650 (Miss.1996), that Anderson waived his right to complain about the denial of his statutory right to a speedy trial since he did not assert his right to a speedy trial until well after the deadline had passed, and even then, failed to obtain a ruling on the motion. Further, our holding is buttressed by the fact that Anderson has shown no prejudice. Id. at 650.
4. Conflict of Interest
¶ 45. In his final issue, Anderson asserts that a conflict of interest existed when James Powell, III, the district attorney for Holmes County, prosecuted this case against him. According to Anderson, Powell was appointed in 1981 to represent him on an offense while Anderson was in the military. Anderson asserts that this prior representation caused him to be denied a fair and impartial trial in the case sub judice.
¶ 46. The following rule is the proper starting point for resolving this issue:
[N]o purpose would be served by applying the proscriptive rule to bar a prosecuting attorney's participation in a criminal case where the evidence fails to establish that the attorney, by reason of his professional relations with the accused, gained any confidential information regarding the matter involved in the criminal prosecution. Each case must therefore be examined on its facts in order to determine the nature of the attorney's prior relationship with the accused and the substance of any communications between the attorney and the accused.
Wagner v. State, 624 So.2d 60, 62-63 (Miss.1993) (citing Gray v. State, 469 So.2d 1252, 1255 (Miss.1985)).
¶ 47. We find no merit in Anderson's argument that a conflict of interest existed because of Powell's prior representation. This representation occurred approximately twenty years prior to the prosecution on the present charges. Anderson has not demonstrated how Powell's previous representation of him in the 1981 military proceeding allowed Powell to obtain confidential information concerning the case sub judice. We therefore find no conflict of interest existing in Powell's prosecution of this matter. This issue lacks merit.
¶ 48. THE JUDGMENT OF THE CIRCUIT COURT OF HOLMES COUNTY OF CONVICTION OF COUNT I, AGGRAVATED ASSAULT AND SENTENCE OF TEN YEARS AND COUNT II, POSSESSION OF A FIREARM BY A CONVICTED FELON AND SENTENCE OF THREE YEARS, WITH SENTENCES TO RUN CONSECUTIVELY, IN THE CUSTODY OF MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HOLMES COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.
NOTES
[1] The indictment for these charges is not contained in the record. This information is contained in a motion filed by Anderson to dismiss the indictment on denial of speedy trial grounds.