914 So.2d 245 (2005)
Terri Lynn SUMMERS, Appellant
v.
STATE of Mississippi, Appellee.
No. 2004-KP-00360-COA.
Court of Appeals of Mississippi.
July 26, 2005.
Rehearing Denied November 8, 2005.
*247 Terri Lynn Summers, Appellant, pro se.
Office of the Attorney General by Billy L. Gore, attorney for appellee.
Before KING, C.J., MYERS and ISHEE, JJ.
MYERS, J., for the Court.
¶ 1. On March 4, 2002, Terri Summers was indicted in Harrison County, Mississippi for embezzlement of an amount greater than two hundred fifty dollars, in violation of Mississippi Code Annotated § 97-23-19 (Rev.2000), and was arraigned *248 on June 10, 2002. Summers was subsequently tried on December 1, 2003, and was found guilty. As a result, Summers was sentenced to ten years in the custody of the Mississippi Department of Corrections, with ten years suspended and probation for a period of five years. Further Summers was ordered to pay court costs, a fine in the amount of $1,000, and restitution in the amount of $12,500.
¶ 2. Prior to her trial, on July 30, 2003, Summers filed a "motion to dismiss charges for not granting a trial within 270 days of arraignment," which was denied. Aggrieved by the trial court's denial of her motion, Summers appeals, raising the following issue:
I. DID THE TRIAL COURT ERR IN FAILING TO DISMISS THE CHARGES AGAINST SUMMERS, IN VIOLATION OF MISSISSIPPI CODE ANNOTATED § 99-17-1 AND HER SIXTH AND FOURTEENTH AMENDMENT RIGHTS TO A SPEEDY TRIAL.
¶ 3. Finding no error, we affirm.

LEGAL ANALYSIS
I. DID THE TRIAL COURT ERR IN FAILING TO DISMISS THE CHARGES AGAINST SUMMERS, IN VIOLATION OF MISSISSIPPI CODE ANNOTATED § 99-17-1 AND HER SIXTH AND FOURTEENTH AMENDMENT RIGHTS TO A SPEEDY TRIAL.

STANDARD OF REVIEW
Review of a speedy trial claim encompasses the fact question of whether the trial delay rose from good cause. Under this Court's standard of review, this Court will uphold a decision based on substantial, credible evidence. Folk v. State, 576 So.2d 1243, 1247 (Miss. 1991). If no probative evidence supports the trial court's finding of good cause, this Court will ordinarily reverse. Folk v. State, 576 So.2d at 1247. The state bears the burden of proving good cause for a speedy trial delay and thus bears the risk of non-persuasion. Flores v. State, 574 So.2d 1314, 1318 (Miss. 1990).
DeLoach v. State, 722 So.2d 512, 516(¶ 12) (Miss.1998).

DISCUSSION
¶ 4. "A defendant in a criminal case has a right to a speedy trial guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and by Article 3, Section 26 of the Mississippi Constitution." Wesley v. State, 872 So.2d 763, 766(¶ 6) (Miss.Ct.App.2004) (citing Sharp v. State, 786 So.2d 372, 377(¶ 4) (Miss. 2001)). Summers argues that due to multiple continuances, she was denied her Sixth and Fourteenth Amendment rights to a speedy trial and due process, as well as her statutory right to a speedy trial.
¶ 5. It is clear from the record that Summers was indicted on March 4, 2002, and tried on December 1 through 2, 2003, more than 600 days after her indictment and over 500 days after the date of her arraignment. In order to fully understand Summers's argument, the procedural history of the case is necessary.
¶ 6. As stated previously, Summers was indicted on March 4, 2002. On May 24, 2002, upon motion of Summers and her attorney, William Martin, a continuance was granted and arraignment was set for June 17, 2002. On June 10, 2002, Summers was arraigned, entered a plea of "not guilty," and trial was set for September 16, 2002. At some point between her arraignment and trial, Summers obtained new counsel, and was represented by Derrick Cusick and Stephen Cozart. On September *249 9, 2002, again on the motion of Summers, Cusick, and Cozart, a continuance was granted due to "discovery not completed by [the] defense." Specifically stated and circled on Summers's motion for continuance are the words "[d]efendant waives all speedy trial rights or objections." This motion and order was signed by both the prosecutor and Cusick. Trial was then set for January 21, 2003.
¶ 7. On January 13, 2003, a hearing was held on Cusick and Cozart's motion to withdraw as counsel. The reason underlying Cusick and Cozart's request was that they had been sued by Kathleen Smiley, Summers's former boss from whose office these claims originate, resulting in a conflict of interest between the attorneys and Summers. Due to this conflict, the trial judge allowed the attorneys to withdraw and appointed Felicia Burkes as Summers's new counsel. Burkes and the State both thought that the trial was scheduled to be held during the week of August 4, 2003, but realized in March that the trial date had failed to be set. As a result, the parties continued discovery and attempted to agree on the details of a North Carolina plea agreement.
¶ 8. On August 18, 2003, Burkes filed a "motion to dismiss charges for not granting a trial within 270 days of arraignment" which was denied. At this motion hearing, the trial court entered an order setting the trial for December 1, 2003, so as to allow Summers to subpoena the income tax records of Smiley, to aid in the preparation of her defense. The court, in ruling on Summers's motion to dismiss found as follows:
I find as a matter of fact that plea negotiations, as well as discovery, has been ongoing and that the substitution of counsel in fact negates any prejudice to the defendant such that would require dismissal on the grounds of a failure to grant [a] speedy trail. So I'm denying the motion to dismiss for those reasons.
¶ 9. During the hearing on Summers's motion to dismiss, Burkes acknowledged that there were several continuances in the case, but attributed each of these continuances to the victim, Smiley. During the hearing on her motion, Summers argued that due to Smiley filing a civil suit against Summers's former counsel, she was forced to obtain alternate representation, thereby delaying her trial and causing her prejudice. Further, Summers argued that due to a mistake by the court administrator, the case was again delayed, as it appeared "[t]hat it simply fell off the docket...." These same issues are raised on appeal. As Summers raises this issue under the context of both her statutory right and constitutional right, we will address both of her claims individually.

a. Statutory Speedy Trial Right
¶ 10. Mississippi Code Annotated § 99-17-1 (Rev.2000) states that "[u]nless good cause be shown, and a continuance duly granted by the court, all offenses for which indictments are presented to the court shall be tried no later than two hundred seventy (270) days after the accused has been arraigned." The first step in determining whether one's statutory right to a speedy trial has been violated, is to calculate the number of days between the arraignment and the trial. In performing this calculation, "[t]he date of arraignment is not counted but the date of trial is and weekends are counted unless the 270th day is a Sunday." Johnson v. State, 756 So.2d 4, 11(¶ 21) (Miss.Ct.App.1999). It is evident from the record that Summers was arraigned on June 10, 2002, and eventually tried on December 1-2, 2003, which is 538 days from the date of her arraignment. In support of her contention that her statutory right to a speedy trial has been violated, *250 Summers states that "[n]ot one day of the delay is chargeable to the defense as the great length of time between arraignment and trial was caused by two reasons." Summers contends that these two reasons are (1) the complaining witness, Smiley, refused to cooperate in her discovery responsibilities and refused to deliver certain documents which she was obligated to turn over, and (2) "that [the case] simply fell off of the docket...."
¶ 11. A complete review of the record shows a somewhat different scenario, as a considerable portion of the delay is attributable to Summers's acts. The case, which was originally set for trial on September 16, 2002, was continued on September 9, 2002 by motion of Summers's attorney, Cusick. The period between arraignment and the September 9, 2002 motion for continuance is chargeable to the State. This period of time comprised the first 90 days. The next 134 days, the period of time from the September 9, 2002 continuance, until the new trial date which was January 21, 2003, are attributable to Summers. This period of time is chargeable to Summers, "[a]s such continuances sought by the defense are charged against them." Sharp, 786 So.2d at 378(¶ 7).
¶ 12. The next period of time is not as clear. The transcript demonstrates that the parties were unaware that the trial was not included on the docket until some point in March 2003. The record is not clear on what date in March it was discovered, but assuming it was March 31, as this date would be the latest possible time at which it would have been discovered in March, comprises at most a 69 day block. The uncertainty of which party caused the delay makes it troublesome to attribute this time period against either party. The record before us contains every order resetting the case for trial which has been previously discussed. Although Summers contends "that it simply fell off the docket...," it would appear that either Burkes or Cozart simply failed to reschedule the case for trial, as directed by the trial court. The following colloquy took place regarding this issue:
THE COURT: Just a minute. Just a minute, Ms. Lyons. When Ms. Burkes was appointed in January of `03 
MS. LYONS: Yes, sir, Your Honor.
THE COURT:  the last trial setting had been for January 21st of `03.
MS. LYONS: Yes, sir, Your Honor.
THE COURT: What happened on that date?
MS. LYONS: The case was continued per Mrs. Burkes' request. An order was not entered continuing the case. I have been unable to find an order. It was supposed to be at her designated time, and no one's got 
THE COURT: What's the basis of that information since there is no order?
MS. LYONS: That it simply fell off the docket, Your Honor, until 
THE COURT: No. What is the basis of your information that it was continued at her request since there is no order?
MS. LYONS: Because she was just appointed on the 13th and she couldn't have been ready for trial on the 21st. I recall that conversation.
THE COURT: Okay. So it's based on your recollection. Does the district attorney's file show what happened on the 21st when it was set, or did you pull the court administrator's docket for the 21st and see what the announcement was?
MS. LYONS: No, sir, Your Honor. I did not pull the court administrator's file.
THE COURT: Not the file. They retain the dockets.
MS. LYONS: There is no entry from the 21st. It's just on the 13th it says, *251 motion to withdraw granted, Ms. Burkes was appointed, defendant to pay $300 a month beginning 2/13/03, Cozart to prepare an order for trial to be reset, and I guess that was never done.
THE COURT: All right.
Further, the Court more specifically addressed this period of time as follows:
THE COURT: Ms. Lyons, what evidence is there as to why when the case was set in January 21st of `03, that it either did not go to trial that week, which obviously it did not, the reasons therefore of why there's been no resetting for over eight months now or either months?
MS. LYONS: Well, the file indicates, Your Honor, that Mr. Cozart was to prepare an order resetting the case for trial. Why that was not done, I do not know. But when Ms. Dodson ran our docket in our division in March, I realized that the case had not been set, and at that point I contacted in Ms. Burkes.
Although it is uncertain that any fault may be attributed to the State for the failure of the trial date to appear on the docket, we will assign this amount of time against the State in order to give all favorable inferences to Summers, though not required. Therefore, these 69 days will be attributed against the State.
¶ 13. During the next 140 days, (March 31, 2003 through the August 18, 2003 motion hearing date), it is clear from the record that meaningful plea negotiations were occurring. The record states as follows:
THE COURT: Why was it not set in March when the State realized that it needed to be set?
MS. LYONS: She and I were discussing Ms. Summers pleaing [sic] at that time, and after that she requested a tape  she requested the discovery information. I believe, I think there are three audiotapes. And in between that time, Your Honor, Ms. Burkes and I were just conversing on how to get this case resolved and how to get it to either get Ms. Summers to come in and plea or set it for trial [sic]. But there was no attempt by Mrs. Burkes' office to get it set before July.
THE COURT: Ms. Burkes, was [sic] further discovery requests being made by you subsequent to March of this year?
MS. BURKES: Your Honor, I did 
THE COURT: These tapes and so forth?
MS. BURKES: I did ask for the tapes, but I asked for those tapes in anticipation of trial, no different from I filed subpoenas [sic]. If you'll  I did file subpoena duces tecums in anticipation of preparing the case for trial.
MS. LYONS: She filed the subpoenas on July the 16th.
THE COURT: Don't interrupt, please. I had asked her a question. Let her finish it. Go ahead.
MS. BURKES: Your Honor, Ms. Lyons represents to the Court that the case was continued at my request. That is not true at all. In fact, what I had discussed with Ms. Lyons when I was first appointed to the case by Judge Vlahos was I asked the State since there were all these civil matters pending, if the district attorney's office would look at it and see whether or not it was suitable for diversion, let it go through the diversion process and see what happened down in Chancery Court or in Federal Court.
When we found out that it was not on the August docket, although Ms. Lyons and I were both preparing for trial, because Ms. Lyons actually met with Mrs. Smiley during the week before August *252 the 4th, got some additional information from Ms. Smiley's office and faxed it to me in anticipation of trial, at that point we realized it was not on the Court's docket, we did begin to discuss a North Carolina plea, which is where we ended up two weeks ago on August the 4th when I mentioned to the Court that it had not made the docket but we were both preparing for trial and that an effort had been made to try to resolve it via a North Carolina plea. We could not come up with a set of stipulated facts as the Court had suggested, and so we're here today to go forward on our motion.
(emphasis added).
¶ 14. "Time associated with an earnest attempt at plea negotiations will also not be weighed against the State." Wesley, 872 So.2d at 767(¶ 16) (citing Sharp v. State, 786 So.2d at 378(¶ 8)). Therefore, this 140 day block will be assigned against Summers.
¶ 15. Next, at the August 18, 2003 hearing on the Summers's motion, the trial court established a trial date of December 1, 2003, in part to allow Summers ample opportunity to subpoena Smiley's tax returns from the IRS. Although at least a portion of this delay is clearly attributable to Summers, again, the entire 105 day portion of this time will be attributed to the State in order to give Summers all reasonable inferences, though not required. When calculating all of the time which is attributed to the State, and giving all favorable inferences to Summers, there are 264 days attributed against the State. As such, there is clearly no statutory violation under the guidelines set forth in Mississippi Code Annotated § 99-17-1.
¶ 16. Further, it should be noted that even had the State surpassed the 270 day statutory period as set forth under Mississippi Code Annotated § 99-17-1, Summers's statutory right to a speedy trial would not have been violated, as all of the foregoing reasons for the delay would constitute "good cause" as set forth in the statutory language. Therefore, it cannot be stated that a violation of Summers's statutory right has occurred.

b. Constitutional Right
¶ 17. Next, Summers argues that her constitutional right to a speedy trial was violated. Although compliance with the statutory rule may be shown, such compliance does not necessarily mean that the constitutional requirement has been met. Flores, 574 So.2d at 1321. Unlike the statutory right to a speedy trial, the constitutional right to a speedy trial attaches at the time of arrest, not at arraignment. Atterberry v. State, 667 So.2d 622, 626 (Miss.1995). In order to properly analyze a constitutional right claim, we must conduct a weighing test based upon the Barker factors, which "are (1) the length of delay, (2) the reasons for the delay, (3) assertion of the right to a speedy trial, and (4) prejudice to the defense." Sharp v. State, 786 So.2d at 380(¶ 15) (citing Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)).
¶ 18. First, we will look at the length of delay between Summers's arrest and trial. This period of time was approximately 637 days as Summers was indicted on March 4, 2002 and was tried on December 1, 2003. This period of time is well in excess of eight months, which is presumptively prejudicial. Sharp, 786 So.2d at 380(¶ 15). This factor favors Summers.
¶ 19. Next, we look at the second factor, the reasons for the delay. "Once we find the delay presumptively prejudicial, the burden shifts to the prosecution to produce evidence justifying the delay and to persuade the trier of fact of the legitimacy *253 of these reasons." Anderson v. State, 874 So.2d 1000, 1006(¶ 27) (Miss.Ct. App.2004). The record indicates that the delay can be attributed to continuances requested upon the motion of Summers's attorneys, substitution of counsel on two occasions, plea negotiations, ongoing discovery, and potentially the trial date being lost due to a crowded docket. Clearly, the continuances requested by Summers's attorneys, substitution of counsel, plea negotiations, and ongoing discovery served as a benefit to Summers and should not be weighted against the State. Although as discussed above, it is unclear whether the trial date was lost by the court administrator or whether Summers's attorney failed to properly set a new date for trial, this Court has previously stated that a more neutral reason, e.g., negligence or overcrowded dockets, though construed against the State, should ultimately be assigned less weight. Anderson, 874 So.2d at 1007(¶ 27). As Summers has received an overwhelming benefit by the delays due to the factors listed above, this factor favors the State.
¶ 20. Third, we look to the assertion of the right to a speedy trial. The record demonstrates that Summers filed her "motion to dismiss charges for not granting a trial within 270 days of arraignment" on July 30, 2003. The Mississippi Supreme Court has noted that when a defendant fails to assert his right to a speedy trial, the failure to do so weighs against him. Perry v. State, 637 So.2d 871, 875 (Miss.1994). Further, it is well-settled that "a demand for dismissal for violation of the right to speedy trial is not the equivalent of a demand for speedy trial." Id. Although Summers motioned the trial court to dismiss the charges against her for having failed to grant a trial within 270 days of arraignment, Summers never made a demand for trial. As such, this factor weighs in favor of the State.
¶ 21. Last, we examine the prejudice to the defense caused by the delay. Summers does not set forth any specific instances of prejudice in her appellate brief, nor is there any showing of prejudice throughout the record. There has been no demonstration by Summers that the delay has caused her prejudice in any form. In Trotter v. State, 554 So.2d 313, 318 (Miss. 1989), the Mississippi Supreme Court adopted the following language: "Inordinate delay, wholly aside from possible prejudice to a defense on the merits, may `seriously interfere with the defendant's liberty, whether he is free on bail or not, and ... may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety, in him, his family and his friends." United States v. Marion, 404 U.S. 307, 320, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). Further, our supreme court has found that an affirmative showing of prejudice is not absolutely necessary to prove a denial of the constitutional right to a speedy trial. Flores v. State, 574 So.2d at 1323. Although not required to be shown, such a showing does add weight to a claim of a denial of the right to a speedy trial. Vickery v. State, 535 So.2d 1371, 1377-78 (Miss.1988). Taking into consideration the lack of specific instances of prejudice, the presumed amount of prejudice by the factors addressed above, and the benefit towards Summers for the delay in having the case come to trial, this factor weighs neutrally toward each party.
¶ 22. In applying the balancing test to the four factors listed in Barker, and the conduct of the State and Summers, this Court holds that Summers's constitutional right to a speedy trial was not denied. As stated previously, the total delay attributable to the State was at most 264 days and *254 the record fails to demonstrate any prejudice incurred by Summers as a result. Therefore, this issue is without merit and we affirm the ruling of the trial court.
¶ 23. It should be noted, as both sides have alluded to the fact, though neither have fully incorporated the issue into either of the two arguments, the record includes several grants of continuances. Each of these continuances contain a waiver of Summers's right to assert a violation of her speedy trial right. Of particular importance is the September 9, 2002 continuance, in which Cusick requested a continuance due to the need to complete discovery. This continuance clearly waived Summers's right to assert her right to a speedy trial. Summers argues that her constitutional speedy trial right is unable to be waived by her attorney as such a waiver is personal and must occur through a "knowing, intelligent act ... done with sufficient awareness of the relevant circumstances and likely consequences...." U.S. v. Newell, 315 F.3d 510, 519 (5th Cir.2002) (quoting Hatfield v. Scott, 306 F.3d 223, 230 (5th Cir.2002)). Such is not the case with regards to an individual's waiver of a speedy trial violation. The United States Supreme Court has previously stated that such a waiver may occur if there is a "showing of record that the defendant or his attorney freely acquiesced in a trial date beyond the speedy trial period." New York v. Hill, 528 U.S. 110, 114, 120 S.Ct. 659, 145 L.Ed.2d 560 (2000) (emphasis added). Further, the court stated "`[a]lthough there are basic rights that the attorney cannot waive without the fully informed and publicly acknowledged consent of the client, the lawyer has  and must have  full authority to manage the conduct of the trial.'" Id. at 114-15, 120 S.Ct. 659 (quoting Taylor v. Illinois, 484 U.S. 400, 417-18, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988)). As such, Cusick was responsible for all aspects of timing with Summers's trial, and Summers's right to contest an alleged speedy trial violation was fully waived by Cusick's execution of the waiver. Therefore, Summers's contention is without merit.
¶ 24. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HARRISON COUNTY.
KING, C.J., BRIDGES AND LEE, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.