960 So.2d 529 (2006)
Kenneth ROBERTS, Appellant
v.
STATE of Mississippi, Appellee.
No. 2005-KA-02331-COA.
Court of Appeals of Mississippi.
December 5, 2006.
Rehearing Denied April 24, 2007.
*530 Robert George Clark, John W. Christopher, Jeffrey Ellis, attorneys for appellant.
Office of the Attorney General, by Deshun Terrell Martin, attorney for appellee.
Before LEE, P.J., IRVING and ISHEE, JJ.
LEE, P.J., for the Court.

FACTS AND PROCEDURAL HISTORY
¶ 1. Kenneth Roberts and Southland Oil Company entered into a contract on March 26, 1998, in which Roberts would lease Southland's bulk operating plant in Yazoo City. The parties also entered into a "Bulk Plant Operator's Agreement" which gave the operator, Roberts, the right to market and sell various petroleum products owned by Southland in return for a monthly commission. Per the agreement, Roberts paid rent monthly and operated the plant as an independent contractor. Pertinent to this lawsuit, the agreement stated that Roberts could not extend credit on Southland's accounts to customers who had not been approved for credit by Southland. Any losses caused by Roberts through negligence or bad business practices were deducted at the end of the month from his commission. Roberts operated the bulk plant facility until October 2002.
¶ 2. During the course of the lease, Roberts would extend credit to some customers who had not been approved for credit by Southland or would extend additional credit to customers over their approved limit. When payment was received from these customers Roberts would record it as a cash sale and report it to Southland. He used a separate invoice titled "Roberts Southland Oil" rather than "Southland Oil Co." to record the non-approved sales. Southland knew of this practice. If the accounts came up short at the end of the month, Southland would deduct the deficiency from Roberts's commission. The amount deducted was determined by the amount of fuel that had been taken from the tanks, which was determined by measuring the amount of fuel still in inventory at the end of the month. Southland became *531 aggrieved when Roberts's commission could not cover the deficiencies.
¶ 3. Southland filed a civil suit against Roberts in the County Court of Yazoo County in August 2003. On October 8, 2003, a default judgment in the amount of $51,703.40 was entered against Roberts after he failed to answer Southland's complaint. The judgment reflected the amount of credit Roberts had extended to non-approved customers but which Roberts could not pay out of his commissions, plus prejudgment interest and attorney fees.
¶ 4. When Roberts failed to pay the default judgment, criminal charges were brought by the State. On May 28, 2004, a Yazoo County grand jury returned an indictment charging Roberts with seven counts of embezzlement. The seven counts reflected sales to seven customers with invoices titled "Roberts Southland Oil Co." rather than the invoices of "Southland Oil Co."
¶ 5. During trial in the Circuit Court of Yazoo City, Roberts moved for a directed verdict. The court denied the motion for directed verdict and found that the State had put forth a prima facie case on the charge of embezzlement.
¶ 6. On August 23, 2005, the jury found Roberts guilty of embezzlement on Counts I, IV, and V and not guilty as to the remaining counts. Roberts was sentenced to five years on each count to be served in the custody of the Mississippi Department of Corrections with the sentence in each count to run concurrently with each other. The sentence was to be suspended, conditioned upon one year of house arrest followed by four years of supervised probation. Roberts was also ordered to pay restitution to Southland Oil in the amount of $20,601.95 plus court costs.
¶ 7. Roberts appeals to this Court on the following issues: (1) the court erred in denying his motion for directed verdict; (2) the verdicts of guilty are against the overwhelming weight of the evidence and contrary to law; (3) the court erred in denying his motion for a judgment notwithstanding the verdict or, in the alternative, for a new trial; (4) the court erred in granting the State's requested jury instructions numbered S-1, S-7, and S-9; and (5) the court erred in denying his requested jury instructions numbered D-13, D-16, and D-17.
¶ 8. Finding that the elements of embezzlement were not met, we reverse and render.
I. DID THE CIRCUIT COURT ERR IN DENYING ROBERTS'S MOTION FOR DIRECTED VERDICT?
¶ 9. "A motion for a JNOV, a directed verdict, and a request for a peremptory instruction challenge the legal sufficiency of the evidence." Anderson v. State, 874 So.2d 1000, 1003(¶ 7) (Miss.Ct.App.2004) (citing McClain v. State, 625 So.2d 774, 778 (Miss.1993)).
¶ 10. In considering whether the evidence is sufficient to sustain a conviction in the face of a motion for directed verdict or for judgment notwithstanding the verdict, the critical inquiry is whether the evidence shows "beyond a reasonable doubt that accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction." Bush v. State, 895 So.2d 836, 843(¶ 16) (Miss.2005) (citing Carr v. State, 208 So.2d 886, 889 (Miss.1968)). The relevant question for this Court to ask itself is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found *532 the essential elements of the crime beyond a reasonable doubt." Id.
¶ 11. On appeal, the proper remedy is to reverse and render where the facts and inferences considered in a challenge to the sufficiency of the evidence "point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty." Id. (citing Edwards v. State, 469 So.2d 68, 70 (Miss.1985)). However, the evidence will be deemed to have been sufficient if "reasonable fair-minded men in the exercise of impartial judgment might reach different conclusions on every element of the offense." Id.
¶ 12. For Roberts's conviction to stand, the elements of embezzlement must be met. Embezzlement is the wrongful conversion of property lawfully possessed by the person charged. Medley v. State, 600 So.2d 957, 960 (Miss.1992); Sisk v. State, 294 So.2d 472, 474 (Miss.1974). The statute defining embezzlement, Mississippi Code Annotated section 97-23-19 (Rev. 2006), states, in relevant part:
If any director, agent, clerk, servant, or officer of any incorporated company, or if any trustee or factor, carrier or bailee, or any clerk, agent or servant of any private person, shall embezzle or fraudulently secrete, conceal, or convert to his own use, or make way with, or secrete with intent to embezzle or convert to his own use, any goods, rights in action, money, or other valuable security, effects, or property of any kind or description which shall have come or been intrusted to his care or possession by virtue of his office, place, or employment, either in mass or otherwise, with a value of Five Hundred Dollars ($ 500.00) or more, he shall be guilty of felony embezzlement, and, upon conviction thereof, shall be imprisoned in the Penitentiary not more than ten (10) years, or fined not more than Ten Thousand Dollars ($ 10,000.00), or both. . . .
¶ 13. The State's main argument is that Roberts committed embezzlement when he sold products to non-approved customers under invoices titled "Roberts Southland Oil Co." rather than "Southland Oil Co."
¶ 14. Counts I and IV of the indictment charged Roberts with embezzling from Southland by advancing credit to Hunter Sand & Gravel and Heart of the Delta, respectively, both non-approved customers. Count V of the indictment charged Roberts with selling fuel to himself and converting Southland's products to his own use by invoicing the sale in the name of Roberts Southland Oil Co. To the extent that funds were available, the shortages were taken out of Roberts's commission at the end of the month. Southland knew that Roberts occasionally extended credit to non-approved customers and even made provisions for it in the operator's agreement:
Operator shall not extend credit for Southland's account to any customer without first securing permission in writing from Southland so to do, and operator shall withdraw any credit so extended when directed by Southland. Operator shall be liable to Southland for any loss sustained because of a violation of these provisions. Southland is authorized, at its option, to charge Operator the invoice value to customers of products delivered in violation of such provisions, and Southland shall have the right to deduct and retain for its own use said invoice value from any monies that may then be due or which may thereafter become due Operator with such deduction being considered and accepted by Operator as payment of commission hereunder. In the event Operator is indebted to Southland upon any *533 account, whether the indebtedness shall arise under this Agreement or as a result of any other contract, obligation, or reason whatsoever, Operator agrees that Southland shall have the right to deduct, from any monies due or to become due Operator, such amounts as may be necessary to satisfy or offset such indebtedness, either in whole or in part.
¶ 15. Embezzlement requires "the wrongful appropriation or conversion of property where the original taking was lawful or with the consent of the owner." Howington v. State, 256 So.2d 382, 383-84 (Miss.1972). The State has shown no attempt by Roberts to wrongfully convert Southland's products to his own use. Roberts made some bad business decisions by extending credit to customers who could not pay and is liable to Southland for those debts, but Roberts did not intend to embezzle or appropriate Southland's products to his own use. The deficiencies in payment on credit by the non-approved customers were deducted by agreement from Roberts's commission. Southland did not complain until Roberts got in over his head and the debt accrued to more than could be covered by his commissions.
¶ 16. The case at hand is more akin to amassing a civil debt than embezzlement. Taking the evidence in the light most favorable to the State, sufficient evidence has not been shown to sustain a conviction for embezzlement. The trial court erred in denying Roberts's motion for a directed verdict.
II. WERE THE GUILTY VERDICTS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE AND CONTRARY TO LAW?
III. DID THE TRIAL COURT ERR IN DENYING ROBERTS'S MOTION FOR A JNOV OR, IN THE ALTERNATIVE, FOR A NEW TRIAL?
¶ 17. Having found that the elements of embezzlement were not met to sustain a conviction, we decline to discuss issues two and three.
IV. DID THE TRIAL COURT ERR IN GRANTING THE STATE'S REQUESTED JURY INSTRUCTIONS S-1, S-7, AND S-9?
V. DID THE TRIAL COURT ERR IN DENYING ROBERTS'S REQUESTED JURY INSTRUCTIONS D-13, D-16, D-17?
¶ 18. Having found that the elements of embezzlement were not met to sustain a conviction, there is no need to discuss whether the jury instructions incorrectly stated the law.
¶ 19. THE JUDGMENT OF THE CIRCUIT COURT OF YAZOO COUNTY IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO YAZOO COUNTY.
KING, C.J., MYERS, P.J., SOUTHWICK, IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.